1  Jordan L. Lurie (130013)
   jlurie@weisslurie.com
2  Leigh A. Parker (170565)
   lparker@weisslurie.com
3  WEISS & LURIE
   10940 Wilshire Boulevard, 23rd Floor
4  Los Angeles, CA  90024
   Tel:   (310) 208-2800
5  Fax:   (310) 209-2348

6  Richard B. Brualdi (Admitted *Pro Hac Vice*)
   rbrualdi@brualdilawfirm.com
7  Sue Lee (Admitted *Pro Hac Vice*)
   slee@brualdilawfirm.com
8  THE BRUALDI LAW FIRM, P.C.
   29 Broadway, Suite 2400
9  New York, NY 10006
   Tel:   (212) 952-0602
10 Fax:   (212) 952-0608

11 Co-Lead Counsel for Lead Plaintiff
   and the Settlement Class
12

13

14                **UNITED STATES DISTRICT COURT**

15                **CENTRAL DISTRICT OF CALIFORNIA**

16 JERRY MICHAEL CRAFTON,         )  CASE NO.  SACV-07-0065-PSG (MLGx)
   Individually and on Behalf of All )
17 Others Similarly Situated,        )  CLASS ACTION
                                     )
18             Plaintiff,            )  **PLAINTIFFS' MEMORANDUM OF**
                                     )  **POINTS AND AUTHORITIES IN**
19     v.                            )  **SUPPORT OF MOTION FOR FINAL**
                                     )  **APPROVAL OF SETTLEMENT**
20 POWERWAVE                         )
   TECHNOLOGIES, INC.,               )  Hearing Date and Time Set by Court Order
21 BRUCE C. EDWARDS,                 )  Dated June 22, 2009
   RONALD J. BUSCHUR and             )
22 KEVIN T. MICHAELS,                )  Date:  October 19, 2009
                                     )  Time: 2:30 p.m.
23             Defendants.           )  Ctrm:  790, Roybal Federal Building
                                     )  Judge: Hon. Philip S. Gutierrez
24 _____   )

25

26

27

28

**TABLE OF CONTENTS**

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    PROCEDURAL BACKGROUND AND MAILING OF NOTICE . . . . 1

III.   THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION
       SETTLEMENTS . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.    THE SETTLEMENT MEETS THE NINTH CIRCUIT STANDARDS FOR
       APPROVAL . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       A.   The Parties Could Identify the Strengths and Weaknesses of Their
            Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       B.   The Settlement Appropriately Balances the Risks of Litigation and the
            Benefit to the Settlement Class of a Certain Recovery . . . . . . . . 7

            1.   Continued Litigation Posed Substantial Risks in Establishing
                 Liability . . . . . . . . . . . . . . . . . . . . . . . 8

            2.   Continued Litigation Posed Substantial Risks in Proving
                 Damages . . . . . . . . . . . . . . . . . . . . . . . . 9

            3.   Balancing the Certainty of an Immediate Recovery Against the
                 Expense and Likely Duration of Protracted Litigation and Trial
                 Favors Settlement . . . . . . . . . . . . . . . . . . 14

            4.   Powerwave's Deteriorating Financial Condition Supports
                 Settlement . . . . . . . . . . . . . . . . . . . . . 15

       C.   The Recommendations of Experienced Counsel Heavily Favor
            Approval of the Settlement . . . . . . . . . . . . . . . . 16

       D.   Reaction of the Settlement Class Supports Approval
            of the Settlement . . . . . . . . . . . . . . . . . . . . 16

V.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND
       ADEQUATE AND SHOULD BE APPROVED BY THE COURT . . . 17

VI.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . 20

i

**TABLE OF AUTHORITIES**

**CASE**                                                                **Page**

*AUSA Life Ins. Co. v. Ernst & Young*,
    2002 U.S. App. LEXIS 13845 (2d Cir. July 8, 2002) . . . . . . . . . . .   13

*Backman v. Polaroid Corp.*,
    910 F.2d 10 (1st Cir. 1990)   . . . . . . . . . . . . . . . . . . . .   13

*Beecher v. Able*,
    575 F.2d 1010 (2d Cir. 1978) . . . . . . . . . . . . . . . . . . . .   17

*Behrens v. Wometco Enters., Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)  . .   11

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979) . . . . . . . . . . . . . . . . . .   *passim*

*Bullock v. Adm'r of Estate of Kircher*,
    84 F.R.D. 1 (D.N.J. 1979) . . . . . . . . . . . . . . . . . . . . . .   14

*Chatelain v. Prudential-Bache Sec.*,
    805 F. Supp. 209 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . .   11

 *Class Plaintiffs v. Seattle*,
    955 F.2d 1268 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . .   17

*Conn. Ret. Plan & Trust Funds v. Amgen, Inc.*,
    2009 U.S. Dist. LEXIS 71653 (C.D. Cal. Aug. 12, 2009)  . . . . . . . .   10

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) . . . . . . . . . . . . . . . . . . . . .   11- 12

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) . . . . . . . . . . . . . . . . . . . . . . . . .   18

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal.), *aff'd*, 661 F.2d 939 (9th Cir. 1981)   . . . .   *passim*

*Fisher Bros. v. Cambridge-Lee Indus., Inc.*,
    630 F. Supp. 482 (E.D. Pa. 1985) . . . . . . . . . . . . . . . . . .   16

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) . . . . . . . . . . . . . . . . . . . . .   6, 7, 14

*Hughes v. Microsoft Corp.*,
    2001 U.S. Dist. LEXIS 5976 (W.D. Wash. Mar. 26, 2001)   . . . . . . .   5, 6

*In re Am. Bank Note Holographics*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . .   17

*In re Apple Computer Sec. Litig.*,
    1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) . . . . . . . .   13

*In re Chicken Antitrust Litig. Am. Poultry,*
    669 F.2d 228 (5th Cir. 1982) . . . . . . . . . . . . . . . . . . . . 17 - 18

*In re Crazy Eddie Sec. Litig.,*
    824 F. Supp. 320 (E.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . 12

*In re Fleet/Norstar Sec. Litig.,*
    935 F Supp. 99 (D.R.I. 1996) . . . . . . . . . . . . . . . . . . . . 17

*In re Ikon Office Solutions, Inc. Sec. Litig.,*
    194 F.R.D. 166 (E.D. Pa. 2000) . . . . . . . . . . . . . . . . . . . 8

*In re Marine Midland Motor Vehicle Leasing Litig.,*
    155 F.R.D. 416 (W.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . 17

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . *passim*

*In re Mfrs. Life Ins. Co. Premium Litig.,*
    1998 U.S. Dist. LEXIS 23217 (S.D. Cal. Dec. 21, 1998) . . . . . . . . 13

*In re Nvidia Corp. Deriv. Litig.,*
    2009 U.S. Dist. LEXIS 24973 (N.D. Cal. Mar. 18, 2009) . . . . . . . . 6

*In re Pac. Enters. Sec. Litig.,*
    47 F.3d 373(9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . 4, 6

*In re PaineWebber Ltd. P'ships Litig.,*
    171 F.R.D. 104 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997) . . . . . . 6

*In re Portal Software Sec. Litig.,*
    2007 U.S. Dist. LEXIS 88886 (N.D. Cal. Nov. 26, 2007) . . . . . . . . 12

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
    720 F. Supp. 1379 (D. Ariz. 1989), *aff'd sub nom.  Class Plaintiffs v.
    Seattle*, 955 F.2d 1268 (9th Cir.), *cert. denied*, 506 U.S. 953 (1992) . . . . 4

*In re Warner Commc'ns Sec. Litig.,*
    618 F. Supp. 735 (S.D.N.Y. 1985),
    *aff'd*, 798 F.2d 35 (2d Cir. 1986) . . . . . . . . . . . . . . . . 7, 11, 14

*Lewis v. Newman,*
    59 F.R.D. 525 (S.D.N.Y. 1973) . . . . . . . . . . . . . . . . . . . 7

*Malchman v. Davis,*
    761 F.2d 893 (2d Cir. 1985), *cert. denied*, 475 U.S. 1143 (1986) . . . . . 6

*Manchaca v. Chater,*
    927 F. Supp. 962 (E.D.Tex. 1996) . . . . . . . . . . . . . . . . . . 17

*McPhail v. First Command Fin. Planning, Inc.,*
    2009 U.S. Dist. LEXIS 26544 (S.D. Cal. Mar. 30, 2009) . . . . . . . 12, 15

*Milstein v. Huck,*
    600 F. Supp. 254 (E.D.N.Y. 1984) . . . . . . . . . . . . . . . . . . 14

*MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*,
    797 F.2d 799 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . 4

*Nat'l Rural Telecoms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . 7

*Newman v. Stein*,
    464 F.2d 689 (2d Cir.), *cert. denied*, 409 U.S. 1039 (1972) . . . . . . . . 3

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . *passim*

*Oscar Private Equity Investments v. Allegiance Telecom, Inc.*,
    487 F.3d 261 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . 10

*Republic Nat'l Life Ins. Co. v. Beasley*,
    73 F.R.D. 658 (S.D.N.Y. 1977) . . . . . . . . . . . . . . . . . . . . . 7

*Robbins v. Koger Props.*,
    116 F.3d 1441 (11th Cir. 1997) . . . . . . . . . . . . . . . . . . . . 13

*Steinberg v. Carey*,
    470 F. Supp. 471 (S.D.N.Y. 1979) . . . . . . . . . . . . . . . . . . . 3

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370, 1375 (9th Cir. 1993), *cert. denied*, 512 U.S. 1220 (1994) . 4, 15

*Util. Reform Project v. Bonneville Power Admin.*,
    869 F.2d 437 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . 4

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . 4

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . 4, 6, 16

*White v. NFL*,
    822 F. Supp. 1389 (D. Minn. 1993) . . . . . . . . . . . . . . . . . . . 17

*Williams v. First Nat'l Bank*,
    216 U.S. 582 (1910) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Winkler v. NRD Mining, Ltd.*,
    198 F.R.D. 355 (E.D.N.Y.), *aff'd sub nom. Winkler v. Wrigley*,
    242 F.3d 369 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . 13

*Young v. Katz*,
    447 F.2d 431 (5th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . 14

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78j(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
§78t(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
§78u-4(e) . . . . . . . . . . . . . . . . . . . . . . . . 18

Federal Rules of Civil Procedure
Rule 23(e) . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

**SECONDARY AUTHORITY**

Elaine Buckberg, Todd Foster and Stephanie Plancich,
*Recent Trends in Securities Class Action Litigation:*
*2003 Early Update* (NERA Feb. 2004) . . . . . . . . . . . . . . . . . 12

*Manual for Complex Litigation,*
Section 30.42 (3d ed. 1995) . . . . . . . . . . . . . . . . . . . . . . 6

Ronald I. Miller, Ph.D., Todd Foster, Elaine Buckberg, Ph.D.,
*Recent Trends in Shareholder Class Action Litigation: Beyond the Mega-*
*Settlements, is Stabilization Ahead?* (NERA Apr. 2006) . . . . . . . . 12-13

## I.   INTRODUCTION

On June 22, 2009, this Court preliminarily approved the Settlement of this action for $3.15 million.[1] Lead Plaintiff John Both, on behalf of the Settlement Class (collectively "Plaintiffs"), hereby seeks final approval of the Settlement.

The Settlement is "fair, reasonable and adequate" and should be approved. The Settlement was negotiated by United States District Judge Nicholas H. Politan (Ret.), and there are no objections to the Settlement.  Moreover, the percentage of recovery in this Settlement far exceeds the average securities class action settlement in the Ninth Circuit.  In addition, as set forth below (and discussed and analyzed in greater detail in Plaintiffs' Confidential Memorandum in Support of Motion for Final Settlement Approval lodged concurrently), the Settlement is truly an outstanding result based on very substantial problems Plaintiffs faced in proving causation and damages.

Accordingly, for all the reasons set forth herein, Plaintiffs respectfully request that the Settlement be granted final approval.

## II.   PROCEDURAL BACKGROUND AND MAILING OF NOTICE

A detailed discussion of Plaintiffs' claims and the history of the litigation leading to this Settlement are detailed in the Declaration of Jordan L. Lurie in Support of Final Settlement Approval and an Award of Attorneys' Fees and Expenses ("Lurie Decl.") filed concurrently.  In sum, this litigation began on January 17, 2007, with the filing of a class action lawsuit asserting that Defendants violated federal securities laws by issuing false and misleading statements concerning the financial results and operations of defendant Powerwave Technologies, Inc. ("Powerwave" or the "Company").  In all, four putative class actions were filed in this Court on behalf of purchasers of Powerwave common

---

[1]Unless otherwise indicated, all capitalized terms have the same meaning as defined in the Stipulation and Agreement of Settlement ("Stipulation") dated May 14, 2009 and filed on May 15, 2009.

1

stock during the time period May 2, 2005 through October 9, 2009, inclusive.[2]

During the course of the litigation and after further investigation by Plaintiffs' Co-Lead Counsel, Plaintiffs filed their First Amended Consolidated Class Action Complaint (the "FACC"). The FACC alleged violations of §§10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b), 78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. §240.10b-5, on behalf of a class of public shareholders who purchased Powerwave common stock during the period May 2, 2005 through November 2, 2006, inclusive, and against Powerwave and certain of its officers and directors, collectively, the Defendants. The FACC alleged that the Defendants made material misrepresentations about, *inter alia*, Powerwave's purported financial condition, operations, accounting, growth, income, earnings and prospects, and concealed that the Company's reported financial statements were materially overstated.

On April 17, 2008, this Court granted in part and denied in part Defendants' motion to dismiss the FACC. On July 15, 2008, the Court denied Defendants' subsequent motion for partial reconsideration. On December 19, 2008, the Lead Plaintiff filed a motion for class certification, which was not ruled upon because the case subsequently settled. On January 14, 2009, the parties participated in mediation at arm's length under the supervision of Judge Nicholas H. Politan (Ret.). By the time of the mediation, Plaintiffs had conducted an extensive investigation, including consulting with experts, regarding the strengths and weaknesses of their case.

After the Court preliminarily approved the Settlement on June 22, 2009, the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") approved by this Court was mailed to over 93,000 potential Settlement Class

---

[2]These actions were captioned *Crafton v. Powerwave Technologies, Inc., et al.*, Case No. SACV-07-0065-PSG, *Kwan v. Powerwave Technologies, Inc., et al.*, Case No. SACV-07-839-PSG, *Tedesco v. Powerwave Technologies, Inc., et al.*, Case No. SACV-07-0158-PSG and *Etemadieh v. Powerwave Technologies, Inc., et al.*, Case No. SACV-07-287 JVX (RNBx) (the "Actions").

Members beginning on August 12, 2009 and was posted on the Claims
Administrator's website.  In addition, the Summary Notice approved by the Court
was published on August 24, 2009 and again on September 1, 2009 on *Business
Wire*.[3]  The last date to file objections to any aspect of the settlement was October
5, 2009.  As of the date of this filing, no objections have been received by
Plaintiffs' Co-Lead Counsel, which is an overwhelming endorsement of the
Settlement by the Settlement Class.

## III.   THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

Federal Rule of Civil Procedure 23(e) requires that class action settlements
be fair, adequate and reasonable.  The factors analyzed in this Circuit to determine
the fairness of a class action settlement are set forth in *Officers for Justice v. Civil
Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), and are discussed in detail below.
In sum, Plaintiffs' Co-Lead Counsel firmly believe that the Settlement is fair,
reasonable and adequate based on their extensive investigation, analysis of publicly
available documents, interviews with potential witnesses, the review of thousands
of pages of documents produced by Powerwave, the amount obtained in the
Settlement versus the risk of obtaining a larger judgment if successful at trial, the
certainty of a recovery versus the risks of no recovery, past experience in other
class actions, the serious disputes between the parties concerning liability and
damages, and the favorable reaction of the Settlement Class.  Thus, Co-Lead
Counsel recommend that the Settlement be approved by this Court.[4]

It is well established in the Ninth Circuit that "voluntary conciliation and

---

[3] *See* paragraphs 3-8 of the Declaration of Michael Rosenbaum re: Mailing of Notice, Summary Notice and Requests for Exclusion Received ("Rosenbaum Decl."), filed concurrently herewith.

[4] In reviewing this settlement under Rule 23, the Court is not required to substitute its business judgment for that of these counsel, *Steinberg v. Carey*, 470 F. Supp. 471 (S.D.N.Y. 1979); the settlement should be approved if it is within a "range of reasonableness," *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.), *cert. denied*, 409 U.S. 1039 (1972).

1    settlement are the preferred means of dispute resolution." *Officers for Justice*, 688

2    F.2d at 625.  Class action suits readily lend themselves to compromise because of

3    the difficulties of proof, the uncertainties of the outcome and the typical length of

4    litigation.  "[T]here is an overriding public interest in settling and quieting

5    litigation," and this is "particularly true in class action suits." *Van Bronkhorst v.*

6    *Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *Util. Reform Project v. Bonneville*

7    *Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).[5]

8         The Ninth Circuit has provided a non-exclusive list of factors which may be

9    considered in evaluating the fairness of a class action settlement:

10        Although Rule 23(e) is silent respecting the standard by which a proposed

11        settlement is to be evaluated, the universally applied standard is whether the

12        settlement is fundamentally fair, adequate and reasonable.  The district

13        court's ultimate determination will necessarily involve a balancing of several

14        factors which may include, among others, some or all of the following: the

15        strength of plaintiffs' case; the risk, expense, complexity and likely duration

16        of further litigation; the risk of maintaining class action status throughout the

17        trial; the amount offered in settlement; the extent of discovery completed,

18        and the stage of the proceedings; the experience and views of counsel; the

19        presence of a governmental participant; and the reaction of the class

20        members to the proposed settlement.

21   *Officers for Justice*, 688 F.2d at 625 (citations omitted).  *Accord Torrisi v. Tucson*

22   *Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993), *cert. denied*, 512 U.S. 1220

23   (1994); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379 (D.

24   Ariz. 1989), *aff'd sub nom. Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir.),

25   *cert. denied*, 506 U.S. 953 (1992).

26        [5]The law always favors the compromise of disputed claims.  *See Williams v.*

27   *First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373,
     378 (9th Cir. 1995); *MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*, 797 F.2d 799, 802

28   (9th Cir. 1986); including those asserted in stockholder class actions, *Weinberger v.*
     *Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).

1    The district court must exercise sound discretion in approving a settlement.

2    *See Torrisi*, 8 F.3d at 1375; *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18

3    (N.D. Cal.), *aff'd*, 661 F.2d 939 (9th Cir. 1981).  However, a strong initial

4    presumption of fairness attaches to a proposed settlement if the settlement is

5    reached by experienced counsel after arm's length negotiations, and great weight is

6    accorded to the recommendations of counsel, who are most closely acquainted with

7    the facts of the underlying litigation.  *See Hughes v. Microsoft Corp*., 2001 U.S.

8    Dist. LEXIS 5976, at *21 (W.D. Wash. Mar. 26, 2001).  Therefore, in exercising

9    its discretion, "the court's intrusion upon what is otherwise a private consensual

10   agreement negotiated between the parties to a lawsuit must be limited to the extent

11   necessary to reach a reasoned judgment that the agreement is not the product of

12   fraud or overreaching by, or collusion between, the negotiating parties, and that the

13   settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

14   *Officers for Justice*, 688 F.2d at 625.  The Ninth Circuit defines the limits of the

15   inquiry to be made by the Court in the following manner:

16           Therefore, the settlement or fairness hearing is not to be turned into a trial or

17           rehearsal for trial on the merits.  Neither the trial court nor this court is to

18           reach any ultimate conclusions on the contested issues of fact and law which

19           underlie the merits of the dispute, for it is the very uncertainty of outcome in

20           litigation and avoidance of wasteful and expensive litigation that induce

21           consensual settlements.  The proposed settlement is not to be judged against

22           a hypothetical or speculative measure of what ***might*** have been achieved by

23           the negotiators.

24   *Id*. (emphasis in the original).  As explained below and in the Lurie Decl.,

25   application of these criteria shows that this settlement warrants the Court's

26   approval.

27           Moreover, "[t]he recommendations of plaintiffs' counsel should be given a

28   presumption of reasonableness."  *Boyd v. Bechtel Corp*., 485 F. Supp. 610, 622

5

(N.D. Cal. 1979).  The presumption of reasonableness in this action is fully warranted because the settlement is the product of arm's-length negotiations.  *See In re Nvidia Corp. Deriv. Litig.*, 2009 U.S. Dist. LEXIS 24973, at *11 (N.D. Cal. Mar. 18, 2009) (mediation conducted with the assistance of a retired federal judge as mediator "weighs considerably against any inference of a collusive settlement" (citation omitted); *see also Hughes*, 2001 U.S. Dist. LEXIS 5976, at *17, citing *Pac. Enters.*, 47 F.3d at 378 (finding mediator's involvement supports settlement approval).  Finally, it is the considered judgment of counsel for the parties that this settlement is a fair, reasonable and adequate resolution of the litigation.  *See Hughes*, 2001 U.S. Dist. LEXIS 5976, at *20-*21; *Manual for Complex Litigation*, Section 30.42 (3d ed. 1995).[6]

## IV.  THE SETTLEMENT MEETS THE NINTH CIRCUIT STANDARDS FOR APPROVAL

### A.  The Parties Could Identify the Strengths and Weaknesses of Their Cases

The stage of the proceedings, including the amount of discovery completed, is one of the factors which courts consider in determining the fairness, reasonableness and adequacy of a settlement.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *see also Weinberger*, 698 F.2d at 74; *Ellis*, 87 F.R.D. at 18; *Boyd*, 485 F. Supp. at 616-617.

Here, Plaintiffs' Co-Lead Counsel conducted informal investigations and consulted with consultants regarding Plaintiffs' accounting claims and damages; participated in formal discovery that included review of thousands of pages of documents produced by Defendants; prepared a highly detailed amended complaint; researched the law regarding the claims and defenses asserted; opposed Defendants' motion to dismiss and motion for reconsideration thereon; analyzed

---

[6] *Accord Malchman v. Davis*, 761 F.2d 893, 903 (2d Cir. 1985), *cert. denied*, 475 U.S. 1143 (1986); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

1  the Court's orders on Defendants' motion to dismiss and for reconsideration;

2  prepared a motion for class certification; defended the deposition of the Lead

3  Plaintiff; conducted a confirmatory interview of Powerwave's Vice President of

4  Finance; and thoroughly explored each side's claims and defenses.  As a result,

5  Plaintiffs' Co-Lead Counsel had a comprehensive understanding of the strengths

6  and weaknesses of the case and had sufficient information to make an informed

7  decision regarding the fairness of the settlement before presenting it to the Court.

8  *See In re Mego*, 213 F.3d at 459 (finding parties could identify strengths and

9  weaknesses of claims without formal discovery).

10        **B.**    **The Settlement Appropriately Balances the Risks of Litigation and the Benefit to the Settlement Class of a Certain Recovery**

11        To determine whether the proposed settlement is fair, reasonable and

12  adequate, the court must balance the continuing risks of litigation against the

13  benefits afforded to class members and the immediacy and certainty of a

14  substantial recovery.  *See Mego Fin*., 213 F.3d at 458; *Girsh*, 521 F.2d at 157;

15  *Boyd*, 485 F. Supp. at 616-617; *In re Warner Commc'ns Sec. Litig*., 618 F. Supp.

16  735, 741 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  In other words,

17  "[t]he Court shall consider the vagaries of litigation and compare the significance

18  of immediate recovery by way of the compromise to the mere possibility of relief

19  in the future, after protracted and expensive litigation.  In this respect, '[i]t has

20  been held proper to take the bird in the hand instead of a prospective flock in the

21  bush.'"  *Nat'l Rural Telecoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D.

22  Cal. 2004) (citations omitted).

23        In the context of approving class action settlements, courts attempting to

24  balance these factors have recognized "that stockholder litigation is notably

25  difficult and notoriously uncertain."  *Lewis v. Newman*, 59 F.R.D. 525, 528

26  (S.D.N.Y. 1973); *see also Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658

27  (S.D.N.Y. 1977).  This is even more so today, in this post-Private Securities

28  Litigation Reform Act of 1995 (the "PSLRA") environment, amid defendants'

1   attempts to redefine the contours of the federal securities laws.  *See In re Ikon*

2   *Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities

3   actions have become more difficult from a plaintiff's perspective in the wake of the

4   PSLRA").

5          Here, a balance of these factors weighs heavily in support of approval of the

6   settlement and unquestionably outweighs another distinct possibility - no recovery

7   for the Settlement Class.

8                   **1.    Continued Litigation Posed Substantial Risks in
                            Establishing Liability**

9          The critical point in terms of Plaintiff's evaluation of this case was this

10  Court's Order dated April 17, 2008, which dismissed Plaintiffs' claims based on

11  Defendants' financial projections for FY 2006 and statements regarding future

12  demand from its top customers, delays in implementing the Company's company-

13  wide Enterprise Resource Planning ("ERP") system and other claims concerning

14  Powerwave's operations.   The only claims the Court sustained were the claims

15  based on Powerwave's FY 2005 financial statements.  The Court's April 17, 2008

16  Order was confirmed by this Court's denial of Defendants' motion for partial

17  reconsideration on July 15, 2008.  As set forth below, the dismissed claims would

18  have yielded the most damages, and there were significant obstacles to proving

19  causation and damages with respect to the remaining claims that had been

20  sustained.

21         As a threshold matter, however, Plaintiffs would have had to prevail on their

22  motion for class certification and defeat Defendants' anticipated motion for

23  summary judgment.  If successful, Plaintiffs would then face the risk of

24  establishing liability to the satisfaction of a jury.  At trial, Plaintiffs would face the

25  risks of establishing liability through conflicting testimony and evidence as well as

26  the unpredictability of a lengthy and complex jury trial and the risk that the jury

27  would find that Defendants did not make any false or misleading statements of

28  material fact in the statements at issue.

1    Plaintiffs believe their claims are meritorious and fully supported by the

2    evidence obtained to date, and are confident that they would have succeeded at

3    trial.  However, this confidence must be tempered by the substantial uncertainties

4    associated with going forward with a jury trial, particularly one involving complex

5    financial issues.  As a result, the continuation of the litigation posed substantial

6    risks to any class-wide recovery.  By resolving the matter now, the Settlement

7    Class will receive a guaranteed recovery without the risk of nonpayment or a

8    judgment at trial being reversed on appeal.

9    **2.    Continued Litigation Posed Substantial Risks in Proving Damages**

10    Plaintiffs' Co-Lead Counsel are mindful that even if they were successful in

11    overcoming substantial hurdles on class certification and summary judgment, and

12    in establishing liability at trial, they would still face the additional risk of proving

13    damages.  This case is unusual in that Defendants' announcement on November 2,

14    2006, the end of the Settlement Class Period, disclosed four separate items of bad

15    news.  However, only one disclosure – that of impairment charges related to

16    manufacturing assets in Sweden – concerned the only sustained claims in this

17    action, those arising from the alleged overstatement of the Company's FY 2005

18    financial statements.  Plaintiffs' Co-Lead Counsel believe that if they continued to

19    trial, they would be able to establish damages attributed to the claims sustained by

20    this Court for violation of §10(b) of the Exchange Act of, at most, approximately

21    $8.4 to $11.7 million, based on Plaintiffs' preliminary damages analysis.  The

22    $3.15 million settlement amount is at a minimum 26.9% to 37.5% of the maximum

23    damages, and very likely more.  As discussed below, this percentage of recovery

24    far exceeds the average securities class action settlement and is an exceptional

25    result for the Settlement Class.

26    At trial, Defendants' damage experts would likely contend that all of the

27    losses experienced by the Settlement Class Members were due to factors

28    completely unrelated to the disclosure of the impairment charges alleged by

1    Plaintiffs, thereby eliminating any recovery for the Settlement Class.  Defendants'

2    damage experts would almost certainly opine that non-recoverable market factors,

3    such as the negative events associated with many telecommunications companies

4    during the Settlement Class Period, caused the drops in prices of Powerwave

5    securities.  To the extent that Defendants could prove that all or a portion of the

6    alleged damages were not caused by Defendants' material misstatements or

7    omissions, damages would be reduced accordingly, possibly to *zero*.

8          Indeed, the Fifth Circuit has held that where, as here, the class period-ending

9    disclosure is accompanied by other negative disclosures, plaintiffs failed to

10   demonstrate loss causation and, as a result, the presumption of reliance otherwise

11   granted in efficient market cases does not apply.  *See Oscar Private Equity*

12   *Investments v. Allegiance Telecom, Inc.*, 487 F.3d 261, 269-270 (5th Cir. 2007).  In

13   *Oscar*, the court held that when multiple negative news items are announced

14   contemporaneously, plaintiffs are required to prove that it is "more probable than

15   not" that the corrective disclosure, not the other negative news, caused "a

16   significant amount of the decline" in the company's stock price.  *Id*. at 270-271

17   (citations omitted).  While *Oscar* is not controlling in this Circuit, Plaintiffs are

18   mindful that this Court recently held that plaintiffs need not satisfy the

19   requirements of *Oscar* on a motion for class certification, but stated that "other

20   inquiries into issues such as materiality and loss causation are properly taken up at

21   a later stage in the proceeding."  *Conn. Ret. Plan & Trust Funds v. Amgen, Inc*.,

22   2009 U.S. Dist. LEXIS 71653, at *36 (C.D. Cal. Aug. 12, 2009).  Accordingly,

23   Powerwave's multiple negative disclosures on November 2, 2006 presented a

24   significant risk to Plaintiffs' ability to prove the required elements of loss

25   causation, reliance and damages on summary judgment and at trial.

26          Moreover, proving the existence, and the amount, of damages in securities

27   class actions requires consideration of complex financial models supported by

28   expert testimony, which would be rebutted by Defendants' experts, and there is no

                                                                                    10

1   assurance that a jury would have agreed with Plaintiffs.  In such a battle of the

2   experts, it is impossible to predict with any certainty which arguments would find

3   favor with the jury.  *See Warner Commc'ns*, 618 F. Supp. at 744-745 (approving

4   settlement where "it is virtually impossible to predict with any certainty which

5   testimony would be credited, and ultimately, which damages would be found to

6   have been caused by actionable, rather than the myriad nonactionable factors such

7   as general market conditions"); *see also Chatelain v. Prudential-Bache Sec.*, 805 F.

8   Supp. 209, 214 (S.D.N.Y. 1992); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D.

9   534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

10          Thus, even if Plaintiffs prevailed in establishing liability, significant

11   additional risks would remain in establishing the existence, and amount, of

12   recoverable damages.  While Plaintiffs contend that the aggregate damages that

13   could be established at trial for the sustained claims would be higher than the

14   settlement amount, such a result would require that all significant liability and

15   damage issues would have been resolved in favor of Plaintiffs.  Setting aside the

16   possibility that actual recoverable damages could ultimately have been lower than

17   Plaintiffs' preliminary damage analysis, courts routinely approve settlements

18   providing recoveries representing a small percentage of the potential recovery.  "It

19   is well-settled law that a cash settlement amounting to only a fraction of the

20   potential recovery will not *per se* render the settlement inadequate or unfair."

21   *Officers for Justice*, 688 F.2d at 628 (emphasis in the original).  The Second

22   Circuit has observed:

23          The fact that a proposed settlement may only amount to a

24          fraction of the potential recovery does not, in and of itself, mean that

25          the proposed settlement is grossly inadequate and should be

26          disapproved.

27                              * * * *

28   In fact there is no reason, at least in theory, why a satisfactory

11

1    settlement could not amount to hundredth or even a thousandth part of

2    a single percent of the potential recovery.

3  *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n.2 (2d Cir. 1974).

4    Given the foregoing risks of proving causation and damages, the Settlement

5  of $3.15 million is an excellent result.

6    Moreover, this Settlement exceeds the range of recovery in similar

7  settlements in the Ninth Circuit.  *In In re Mego*, 213 F.3d at 459, the court found

8  that a settlement was fair and adequate where the plaintiff recovered $1.75 million

9  out of a claimed $12 million in damages, or approximately 14.6% of damages.  The

10  Northern District of California has noted that  "[f]or securities class action

11  settlements below $50 million, median settlements as a percentage of estimated

12  damages were 10.5% through year end 2005 and 8.8% in 2006."  *In re Portal*

13  *Software Sec. Litig.*, 2007 U.S. Dist. LEXIS 88886, at *10 (N.D. Cal. Nov. 26,

14  2007); *see also McPhail v. First Command Fin. Planning, Inc.*, 2009 U.S. Dist.

15  LEXIS 26544, at *14-*15 (S.D. Cal. Mar. 30, 2009) (approving settlement where

16  recovery was approximately 7% of the estimated damages).[7]

17    Moreover, a study by National Economic Research Associates ("NERA")

18  states that in 2003, the median percentage of investor losses obtained in

19  shareholder class action settlements was 2.8%.  *See* Elaine Buckberg, Todd Foster

20  and Stephanie Plancich, *Recent Trends in Securities Class Action Litigation: 2003*

21  *Early Update*, at 8 (NERA Feb. 2004), attached as Exhibit C to the Lurie Decl.

22  filed concurrently herewith.  The subsequent NERA April 2006 study includes a

23  chart that indicates the median ratio of the settlement amount to investor losses for

24  2004 and 2005 were 2.4% and 2.8%, respectively.  *See* Ronald I. Miller, Ph.D.,

25  Todd Foster, Elaine Buckberg, Ph.D., *Recent Trends in Shareholder Class Action*

26  *Litigation: Beyond the Mega-Settlements, is Stabilization Ahead?*, at 8 (NERA

27

28    [7]Other jurisdictions are in accord.  *See, e.g., In re Crazy Eddie Sec. Litig.*, 824
F. Supp. 320 (E.D.N.Y. 1993) (settlement of between 6% and 10% of damages).

1   Apr. 2006), Lurie Decl. Exhibit D.  Compared to these statistics, the recovery for

2   Settlement Class Members is an extraordinary result.

3        In summary, although Plaintiffs' Co-Lead Counsel believe that this case is

4   meritorious, their experience has taught them how the risks described above can

5   render the outcome of a trial extremely uncertain.  *See In re Mfrs. Life Ins. Co.*

6   *Premium Litig*., 1998 U.S. Dist. LEXIS 23217, at *17 (S.D. Cal. Dec. 21, 1998)

7   ("even if it is assumed that a successful outcome for plaintiffs at summary

8   judgment or trial would yield a greater recovery than the Settlement - which is not

9   at all apparent - there is easily enough uncertainty in the mix to support settling the

10  dispute rather than risking no recovery in future proceedings").

11       Moreover, even if Plaintiffs were to prevail at trial, risks to the Settlement

12  Class remain.  For example, in *In re Apple Computer Sec. Litig*., 1991 U.S. Dist.

13  LEXIS 15608 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict for plaintiffs

14  after an extended trial.  Based upon the jury's findings, recoverable damages would

15  have exceeded $100 million.  However, Judge Ware overturned the verdict,

16  entering judgment n.o.v. for the individual defendants, and ordered a new trial with

17  respect to the corporate defendant.  In another case, the class won a jury verdict

18  and a motion for j.n.o.v. was denied, but on appeal the judgment was reversed and

19  the case was dismissed.  *See Backman v. Polaroid Corp*., 910 F.2d 10 (1st Cir.

20  1990).  *See also Robbins v. Koger Props*., 116 F.3d 1441, 1449 (11th Cir. 1997)

21  (reversing on appeal $81 million jury verdict and dismissing securities action with

22  prejudice); *AUSA Life Ins. Co. v. Ernst & Young*, 2002 U.S. App. LEXIS 13845

23  (2d Cir. July 8, 2002) (affirming district court's dismissal after a bench trial and

24  earlier appeal and remand); *Winkler v. NRD Mining, Ltd.*, 198 F.R.D. 355

25  (E.D.N.Y.) (granting defendants' motion for judgment as a matter of law after jury

26  verdict for plaintiffs), *aff'd sub nom. Winkler v. Wrigley*, 242 F.3d 369 (2d Cir.

27  2000).  Therefore, careful consideration of the above risks supports approval of the

28  settlement as fair, reasonable and adequate.

1

### 3.   Balancing the Certainty of an Immediate Recovery Against the Expense and Likely Duration of Protracted Litigation and Trial Favors Settlement

2

3    The immediacy and certainty of a recovery is a factor for the court to

4    balance in determining whether the proposed settlement is fair, reasonable and

5    adequate.  *See, e.g., In re Mego*, 213 F.3d at 458; *Girsh*, 521 F.2d at 157.  Courts

6    consistently have held that "[t]he expense and possible duration of the litigation

7    should be considered in evaluating the reasonableness of [a] settlement."  *Milstein*

8    *v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *Officers for Justice*, 688 F.2d at

9    626; *Boyd,* 485 F. Supp. at 616-617; *Bullock v. Adm'r of Estate of Kircher*, 84

10   F.R.D. 1, 10 (D.N.J. 1979).  Therefore, the benefit of the present settlement must

11   also be balanced against the expense of achieving a more favorable result at trial.

12   *See Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971).

13   Approval of the settlement will mean a present recovery for eligible

14   claimants.  Continued litigation would have occupied a number of attorneys for

15   many months through litigation of class certification and summary judgment, and

16   through extensive formal discovery of parties, non-parties and experts.  In addition,

17   a trial would have required substantial and costly expert testimony on both sides.

18   Moreover, a judgment after trial favorable to the Settlement Class would

19   unquestionably be the subject of post-trial motions and appeals, which could

20   prolong the case for several more years.  *See, e.g., Warner Commc'ns*, 618 F.

21   Supp. at 745 (delay from appeals is a factor to be considered).  Therefore, delay,

22   not just at the trial stage, but through post-trial motions and the appellate process as

23   well, could force Settlement Class Members to wait many more years for any

24   recovery, further reducing its value.  Accordingly, settlement of this litigation will

25   ensure a recovery, and eliminate the risk of no recovery at all.  Therefore, the

26   settlement is in the best interests of the Settlement Class.

27   As the Ninth Circuit has made clear, the very essence of a settlement

28   agreement is compromise, "a yielding of absolutes and an abandoning of highest

14

hopes." *Officers for Justice*, 688 F.2d at 624 (internal quotation omitted).

> Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation. . . .

*Id*. (citation omitted); *Ellis*, 87 F.R.D. at 19 (as a *quid pro quo* for not having to undergo the uncertainties and expense of litigation, the plaintiffs must be willing to moderate the measure of their demands).  Accordingly, the fact that the Settlement Class Members potentially could have achieved a greater recovery after trial does not preclude the Court from finding that the settlement is within a "range of reasonableness" that is appropriate for approval.  *E.g., Warner Commc'ns*, 618 F. Supp. at 741.

### 4. Powerwave's Deteriorating Financial Condition Supports Settlement

As the Ninth Circuit noted in *Torrisi*, 8 F.3d at 1376, the precarious financial condition of the defendant company made clear that the district court acted within in discretion in approving the settlement at issue in that case.  Here, the price of Powerwave stock reached a Settlement Class Period high of $15.76 per share and fell to approximately $6.00 per share after Defendants' disclosures at the end of the Settlement Class Period.  The price of the Company's stock continued to fall and by the time the parties mediated in January 2009 had plummeted to the $0.50 per share range.  Prudence required Plaintiffs to consider the possibility that Powerwave would declare bankruptcy and that the litigation would be stayed as a result.  *See McPhail*, 2009 U.S. Dist. LEXIS 26544, at *12 (plaintiffs' concern that the defendant corporation would declare bankruptcy supported final approval of class action settlement).  To date, the price of Powerwave stock remains in the $1.50 per share range.

///

**C.   The Recommendations of Experienced Counsel Heavily Favor Approval of the Settlement**

Experienced counsel, negotiating at arm's length, have weighed the factors discussed above and endorse the settlement.  As courts have stated, the view of the attorneys actively conducting the litigation, while not conclusive, "is entitled to significant weight." *Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985); *Ellis*, 87 F.R.D. at 18 ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight").  In approving a settlement, courts often focus on the "negotiating process by which the settlement was reached." *Weinberger*, 698 F.2d at 74, cited in *Warner Commc'ns*, 618 F. Supp. at 741.  Here, the parties participated in a full day mediation session with the assistance of the Honorable Nicholas H. Politan, Ret., which led to this settlement.

This action has been litigated and settled by experienced and competent counsel on both sides of the case.  The law firms representing the Settlement Class are well known for their experience and success in complex and class action litigation.  That qualified and well-informed counsel endorse the Settlement as being fair, reasonable and adequate to the Settlement Class heavily favors this Court's approval of the Settlement.

**D.   Reaction of the Settlement Class Supports Approval of the Settlement**

Among the most compelling factors to consider is the reaction of the Settlement Class to the Settlement.  Notices of the Settlement were sent to over 93,000 potential Settlement Class Members, the Notice was posted on the Claims Administrator's website and the Summary Notice was published via *Business Wire* on August 24, 2009 and again on September 1, 2009.  The deadline to object to the Settlement was October 5, 2009.

To date, no objections to the Settlement have been received by Plaintiffs' Co-Lead Counsel.  This is an overwhelming endorsement of the Settlement.

16

1    The absence of objections also is significant because the Settlement Class

2    includes, in addition to thousands of individuals, many sophisticated financial

3    institutions which have counsel available to advise, represent and assist them in

4    expressing opposition to the Settlement or the request for attorney's fees and

5    expenses, if they so choose.  Moreover, only five minimal requests for exclusion

6    have been received by the Claims Administrator.  Such an extraordinary response

7    to the Settlement by Members of the Settlement Class strongly supports a finding

8    that the Settlement is fair, reasonable and adequate, and therefore should be

9    approved.  *See, e.g., In re Fleet/Norstar Sec. Litig.*, 935 F Supp. 99, 107 (D.R.I.

10   1996) (settlement approved where fewer than ten out of 40,000 potential class

11   members objected); *Manchaca v. Chater*, 927 F. Supp. 962, 966 (E.D.Tex. 1996)

12   (settlement approved where no objections were raised, after widespread

13   dissemination of notice); *In re Marine Midland Motor Vehicle Leasing Litig.*, 155

14   F.R.D. 416, 420 (W.D.N.Y. 1994) (single objection, later withdrawn, after 53,000

15   notices were sent to potential class members, raised strong presumption that terms

16   of settlement were favorable to class).

17   **V.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND
         ADEQUATE AND SHOULD BE APPROVED BY THE COURT**

18   Assessment of a plan of allocation of settlement proceeds in a class action

19   under Rule 23 of the Federal Rules of Civil Procedure is governed by the same

20   standards of review applicable to the settlement as a whole: the plan must be fair,

21   reasonable and adequate.  *See Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284 (9th

22   Cir. 1992).  An allocation formula need only have a reasonable basis, particularly if

23   recommended by experienced class counsel.  *See White v. NFL*, 822 F. Supp. 1389,

24   1420-1424 (D. Minn. 1993); *In re Am. Bank Note Holographics*, 127 F. Supp. 2d

25   418, 429-430 (S.D.N.Y. 2001).  Moreover, district courts enjoy "broad supervisory

26   powers over the administration of class-action settlements to allocate the proceeds

27   among the claiming class members . . . equitably."  *Beecher v. Able*, 575 F.2d

28   1010, 1016 (2d Cir. 1978); *accord In re Chicken Antitrust Litig. Am. Poultry*, 669

1    F.2d 228, 238 (5th Cir. 1982).

2         In preliminarily approving the Settlement on June 22, 2009, the Court also

3    preliminarily approved the Plan of Allocation and Plaintiffs' analysis submitted at

4    that time.  In sum, the PSLRA expressly requires that the award of damages shall

5    not exceed the purchase or sale price paid for the security and the mean trading

6    price of that security during the 90-day period beginning on the date of the

7    corrective disclosure.  *See* 15 U.S.C. §78u-4(e).  Moreover, the U.S. Supreme

8    Court in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005), has held that loss

9    causation must be established by linking the alleged misstatement to a curative

10    disclosure.

11         The Plan of Allocation here satisfies both requirements.  The only claims

12    sustained are allegations that Powerwave's FY 2005 financial statements were

13    materially overstated.  Defendants disclosed the impairment of assets and other

14    charges relating to those financial statements after the market closed on November

15    2, 2006.  On the next trading day, the price of Powerwave stock dropped $0.19.

16    Accordingly, the Plan of Allocation requires that Settlement Class Members

17    acquired their Powerwave common stock during the Settlement Class Period and

18    held shares acquired during that period through the close of trading on November

19    2, 2006, as required by *Dura*.  Shares acquired during the Settlement Class Period

20    and sold during the Settlement Class Period have a Recognized Claim of zero. *See*

21    Notice at 9.

22         For shares that were purchased or otherwise acquired during the Settlement

23    Class Period and held through the close of trading on November 2, 2006,

24    computation of a Settlement Class Member's claim then depends on whether the

25    shares were held through the 90-day lookback period provided for in the PSLRA

26    (15 U.S.C. §78u-4(e)), or sold at some point during that 90 day period.  Also,

27    damages are limited by the stock drop following the end of the Settlement Class

28    Period, in this case $0.17 per share (the $0.19 per share stock drop as adjusted by

1   Plaintiffs' damages consultants based on non-Company specific factors) on

2   November 3, 2006.

3           Accordingly, the Plan of Allocation provides two sets of calculations. *See*

4   Notice at 9. The first applies to shares sold during the 90-day lookback period

5   (November 3, 2006 through and including January 30, 2007) and provides a table

6   of the 90-day rolling average closing stock price through that period. *Id*. at 12.

7   The second applies to shares retained through the close of trading on January 30,

8   2007.

9           The proposed Plan of Allocation was developed in consultation with

10  Plaintiffs' damages consultants and the Claims Administrator, who are highly

11  experienced in securities class action settlements, and satisfies the requirements of

12  the PSLRA and the Supreme Court. The proposed Plan of Allocation further

13  provides that if any balance remains in the Net Settlement Fund one year after the

14  initial distribution of the funds, a second distribution will be made to Settlement

15  Class Members who cashed their initial distributions and who would receive the

16  stated minimum amount of distribution. *Id*. at 11. Should any funds remain six

17  months after the second distribution, the balance shall be contributed to an

18  appropriate non-profit organization approved by this Court. *Id*. Pursuant to this

19  Court's minute order dated June 22, 2009, the parties have separately filed a joint

20  memorandum recommending that any residual be contributed to the American Red

21  Cross, subject to this Court's approval.

22          Plaintiffs' Co-Lead Counsel maintain that the Plan of Allocation will

23  equitably apportion the net settlement proceeds among eligible Settlement Class

24  Members using the principles set forth in the statutes and case law cited above and

25  should therefore be approved by the Court.

26  ///

27  ///

28  ///

19

VI.   **CONCLUSION**

This Settlement is fair, reasonable and adequate, and Plaintiffs respectfully request that the Settlement be approved.[8]

Dated: October 13, 2009

Jordan L. Lurie
Leigh A. Parker
WEISS & LURIE

/s/ - Jordan L. Lurie
10940 Wilshire Boulevard, 23rd Floor
Los Angeles, CA 90024
Tel:   (310) 208-2800
Fax:   (310) 209-2348

Richard B. Brualdi
Sue Lee
THE BRUALDI LAW FIRM, P.C
29 Broadway, Suite 2400
New York, NY 10006
Tel:   (212) 952-0602
Fax:   (212) 952-0608

Co-Lead Counsel for Lead Plaintiff and the Settlement Class

---

[8] Additional details regarding the evidence and analysis that Plaintiffs relied on in reaching their determination of the merits of the case and the value of the case is set forth in Plaintiff's Confidential Memorandum lodged concurrently pursuant to this Court's June 22, 2009 Order.

20