1  Jordan L. Lurie (130013)
   jlurie@weisslurie.com
2  Leigh A. Parker (170565)
   lparker@weisslurie.com
3  WEISS & LURIE
   10940 Wilshire Boulevard, 23rd Floor
4  Los Angeles, CA  90024
   Tel:   (310) 208-2800
5  Fax:  (310) 209-2348

6  Richard B. Brualdi (Admitted *Pro Hac Vice*)
   rbrualdi@brualdilawfirm.com
7  Sue Lee (Admitted *Pro Hac Vice*)
   slee@brualdilawfirm.com
8  THE BRUALDI LAW FIRM, P.C.
   29 Broadway, Suite 2400
9  New York, NY 10006
   Tel:   (212) 952-0602
10 Fax:  (212) 952-0608

11 Co-Lead Counsel for Lead Plaintiff
   and the Settlement Class

12

13              **UNITED STATES DISTRICT COURT**

14              **CENTRAL DISTRICT OF CALIFORNIA**

15

16 JERRY MICHAEL CRAFTON,          )   CASE NO.  SACV-07-0065-PSG (MLGx)
   Individually and on Behalf of All )
17 Others Similarly Situated,        )   <u>CLASS ACTION</u>
                                     )
18                    Plaintiff,    )   **DECLARATION OF JORDAN L.**
                                     )   **LURIE FILED ON BEHALF OF**
19        v.                        )   **WEISS & LURIE IN SUPPORT OF**
                                     )   **FINAL SETTLEMENT APPROVAL**
20 POWERWAVE                        )   **AND FOR AN AWARD OF**
   TECHNOLOGIES, INC.,              )   **ATTORNEYS' FEES AND EXPENSES**
21 BRUCE C. EDWARDS,                )
   RONALD J. BUSCHUR and            )   Hearing Date and Time Set by Court Order
22 KEVIN T. MICHAELS,               )   Dated June 22, 2009
                                     )
23                    Defendants.   )   Date:  October 19, 2009
                                     )   Time: 2:30 p.m.
24 _____ )   Ctrm: 790, Roybal Federal Building
                                         Judge: Hon. Philip S. Gutierrez
25

26

27

28

I, JORDAN L. LURIE, declare as follows:

1.  I am a Partner of the firm of Weiss & Lurie, one of Plaintiffs' Co-Lead Counsel appointed by the Court in this action.[1]  I submit this declaration, pursuant to Rule 23 of the Federal Rules of Civil Procedure in support of Plaintiffs' applications (a) for this Court's approval of the proposed Settlement of this class action; and (b) for an award of attorneys' fees and reimbursement of expenses to Plaintiffs' Co-Lead Counsel in connection with services rendered to the Settlement Class.

2.  A copy of my firm's resume is attached hereto as Exhibit A.  The resume describes the background of the attorneys of my firm and our experience in class action and other complex litigation.

**LODESTAR**

3.  The total number of hours spent on this litigation by my firm is 2,035.25 based on information provided to me.  The total lodestar amount for attorney/paralegal time based on the firm's current rates is $1,207,600.00 as shown in Exhibit B attached hereto.  The hourly rates shown are the usual and customary rates charged in all of our cases.

4.  My firm incurred a total of $221,365.48 in expenses in connection with the prosecution of this litigation based on information provided to me.  They are broken down as follows:

**EXPENSES**

From Inception to October 13, 2009

| DISBURSEMENT | TOTAL |
|---|---|
| Meals, Hotels & Transportation | $7,559.05 |
| Photocopies | $9,832.40 |
| Postage | $270.00 |

---

[1] Unless otherwise indicated, all capitalized terms have the same meaning as defined in the Stipulation and Agreement of Settlement ("Stipulation") dated May 14, 2009 and filed on May 15, 2009.

1

| | |
|---|---:|
| Telephone, Facsimile, Misc. | $2,562.85 |
| Messenger, Overnight Delivery | $357.81 |
| Filing, Witness & Other Fees | $7,566.53 |
| Lexis, Westlaw, Online Library Research, PACER | $73,696.94 |
| Experts/Consultants/Investigators | $119,519.90 |
| | |
| *TOTAL* | $221,365.48 |

5. The following is additional information regarding certain of these expenses:

a. Filing, Witness and Other Fees: $7,566.53

| *DATE* | *VENDOR* |
|---|---|
| 05/27/2007 - 06/15/2009 | American Legal Support Services, Inc. |
| 04/20/2007 - 01/05/2009 | NOW Legal, Inc. |
| 10/01/2007 - 04/01/2008 | West Group |
| 01/21/2009 | Nicholas H. Politan, mediator |

b. Meals, Hotels and Transportation: $7,559.05. Expenses for meals, hotels and transportation were incurred for the following purposes, *inter alia*:

| *NAME* | *DATE* | *DESTINATION* | *PURPOSE* |
|---|---|---|---|
| Jordan L. Lurie | 06/25/07 - 06/26/09 | New York, NY | Meeting |
| Jordan L. Lurie | 07/02/08 - 07/03/08 | New York, NY | Meeting |
| Leigh A. Parker | 01/09/09 - 01/10/09 | New York, NY | Lead Plaintiff Deposition |
| Leigh A. Parker | 01/13/09 - 01/15/09 | West Palm Beach, FL | Mediation |
| Jordan L. Lurie | 01/13/09 - 01/15/09 | West Palm Beach, FL | Mediation |

c. Photocopying:

In-house (39,201 copies @ $0.25 per copy): $9,800.25

Outside Photocopy Expenses: $32.15

2

| DATE | VENDOR |
|------|--------|
| 02/11/08 | Summit Reprographics |

d.      Lexis, Westlaw, Online Library Research: $73,696.94  These included vendors such as Disclosure, Inc., Dow Jones Interactive, Dow Jones & Co., Inc., Lexis/Nexis, CDA Investment Technologies, PACER Service Center, West Publishing Corporation and Choice Point.  These databases were used to obtain access to SEC filings, legal research and cite-checking of briefs.

e.      Experts/Consultants/Investigators:  $119,519.90

| VENDOR | AMOUNT |
|--------|--------|
| Rossi Doskocil & Finkelstein LLP | $83,939.90 |
| Stanford Consulting | $35,580.00 |

6.      The expenses pertaining to this case are reflected in the books and records of this firm.  These books and records are prepared from expense vouchers, check records and other documents and are an accurate record of the expenses based on information provided to me.

**ADDITIONAL EXHIBITS**

7.      Attached hereto as Exhibit C is a true and correct copy of Elaine Buckberg, Todd Foster and Stephanie Plancich, *Recent Trends in Securities Class Action Litigation: 2003 Early Update* (NERA Feb. 2004) cited in Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Final Approval of Settlement filed concurrently herewith.

8.      Attached hereto as Exhibit D is a true and correct copy of Ronald I. Miller, Ph.D., Todd Foster, Elaine Buckberg, Ph.D., *Recent Trends in Shareholder Class Action Litigation: Beyond the Mega-Settlements, is Stabilization Ahead?* (NERA Apr. 2006) cited in Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Final Approval of Settlement filed concurrently herewith.

**SUMMARY OF THE LITIGATION AND THE WORK PERFORMED BY PLAINTIFFS' CO-LEAD COUNSEL**

9.      This securities class action arises out of Defendants' alleged scheme to fraudulently manipulate the price of Powerwave Technologies, Inc. ("Powerwave" or the "Company") common stock in violation of the federal securities laws. The Plaintiffs are a class (the "Settlement Class") of investors, other than Defendants and other persons specifically excluded, who purchased or otherwise acquired Powerwave common stock between May 2, 2005 and November 2, 2006 (the "Settlement Class Period") and held shares acquired during that period though the end of trading on November 2, 2006.

10.      The parties, by Stipulation, have agreed to settle this case. The Stipulation creates a fund consisting of $3.15 million in cash (the "Settlement Fund") for Settlement Class Members who acquired Powerwave common stock during the Settlement Class Period and held shares acquired during that period through the end of trading on November 2, 2006.

11.      The proposed Settlement is fair, reasonable and an adequate resolution of the claims asserted in this litigation, given the potential risks of continued litigation as well as the delay and expense of continued litigation. Moreover, this litigation was settled at arm's length between experienced securities plaintiffs' counsel and experienced defense attorneys.

12.      Plaintiffs' Co-Lead Counsel prosecuted this litigation on a wholly contingent basis and achieved a Settlement of $3.15 million in cash despite the dismissal of a substantial portion of Plaintiffs' claims. The fee application for 33-1/3% of the Settlement Fund, or $1,050,000, plus expenses in the amount of $275,418.49, is fair to both the Settlement Class and Co-Lead Counsel, and warrants Court approval.

13.      The fee request is consistent with the range of fees customarily awarded in similar cases and is justified in light of the exceptional recovery

achieved for the Settlement Class, the risks undertaken and the quality and extent
of the services performed as set forth herein and in the memoranda in support of
final approval of the proposed Settlement, and Co-Lead Counsel's application for
attorneys' fees and expenses, filed concurrently.  Plaintiffs' Co-Lead Counsel
committed substantial amounts of resources to the litigation, notwithstanding the
significant uncertainty as to whether the litigation would be succeed.

14.     On June 22, 2009, this Court entered an order (the "Notice Order")
granting Plaintiffs' unopposed application for preliminary approval of the
Settlement, approving the form of notice and directing that Notice be distributed to
the Settlement Class.  More than 93,000 notices have been mailed to Settlement
Class Members to date.  *See* paragraphs 3 through 6 of the Declaration of Michael
Rosenbaum re: Mailing of the Notice of Pendency and Proposed Settlement of
Class Action and the Proof of Claim and Release Form and Publication of
Summary Notice ("Rosenbaum Decl."), filed concurrently herewith.  In addition,
summary notice in the form approved by the Court was published via *Business
Wire* on August 24, 2009 and September 1, 2009.  *See* Rosenbaum Decl.,
paragraph 8.  Pursuant to the Notice Order, the deadline for objecting to any aspect
of the Settlement, the plan of allocation of the Settlement proceeds, application for
attorneys' fees and expenses or application for reimbursement of the Lead
Plaintiff's time and expenses in connection with his representation of the
Settlement Class was October 5, 2009.  To date, no objections have been received
by Co-Lead Counsel.  Co-Lead counsel respectfully submit that the absence of
objections to date is a strong validation of the reasonableness of the Settlement, the
plan of allocation and the applications for attorneys' fees and expenses and for
reimbursement of the Lead Plaintiff's time and expenses.

15.     The nature of the claims asserted, a summary of the major proceedings
in the litigation, the work performed by Plaintiffs' Co-Lead Counsel, the settlement
negotiations, the terms of the Settlement and the factors supporting the

reasonableness of Co-Lead Counsel's application for attorneys' fees and expenses are set forth below in detail.  In addition, the Settlement was reached only after extensive negotiations conducted with the assistance of a mediator, U.S. District Judge Nicholas H. Politan (Ret.).  Even after the Settlement was reached in principle, Co-Lead Counsel spent many months finalizing the terms of the Stipulation with counsel for Defendants.  By all accounts, the Settlement reached in this case, which would not have been possible without the efforts of Plaintiffs' Co-Lead Counsel, confers a significant benefit on the Settlement Class and should be approved.

## A.     PLAINTIFFS' CLAIMS IN THE LITIGATION

16.     This is a securities class action brought on behalf of all persons, other than Defendants and other persons specifically excluded, who acquired Powerwave common stock during the period May 2, 2005 through November 2, 2006 and held shares acquired during that period through the end of trading on November 2, 2006.  The Defendants are Powerwave and certain of the top current and former officers of the Company, Bruce Edwards, Ronald J. Buschur and Kevin T. Michaels (the "Individual Defendants").  Plaintiffs allege that Defendants are liable for making materially false and misleading statements, or failing to disclose material adverse facts, and participating in a scheme which operated as a fraud and a deceit on the Members of the Settlement Class in violation of §§10(b) and 20(a) of the Securities Exchange Act (the "Exchange Act"), 15 U.S.C. §78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. §240.10b-5.  Plaintiffs' First Amended Consolidated Class Acton Complaint (the "FACC") alleges that the Defendants made material misrepresentations about, *inter alia*, Powerwave's purported financial condition, operations, accounting, growth, income, earnings and prospects, and concealed that the Company's reported financial statements were materially overstated.

17.     The FACC contains two general categories of allegations:

**(1) FY 2005 Financial Misstatements.**  Plaintiffs allege that the Company's publicly reported financial statements for each quarter of FY 2005 and FY 2005 were materially false and misleading.  Specifically, Defendants failed to timely recognize goodwill and other asset impairment charges as required by Generally Accepted Accounting Principles ("GAAP") in connection with Powerwave subsidiary LGP Allgon Holding AB ("Allgon") in Sweden, and a subsidiary of Allgon, Arkivator Falkoping AB ("Arkivator"), both acquired by Powerwave during FY 2004.  Defendants manipulated the Company's FY 2005 financial statements by improperly deferring to Q3 2006 approximately $21 million in restructuring and asset impairment charges related to Allgon's manufacturing facilities, and approximately $25 million in charges related to the impairment  of Arkivator's goodwill and other assets, that should have been recorded during FY 2005 pursuant to GAAP.  By improperly deferring those charges to Q3 2006, Defendants were able to falsely report substantial net income in Q1 and Q4 2005, rather than net losses.  Reporting the charges as required by GAAP during FY 2005 also would have erased 80% of the $13.0 million net income Powerwave reported in Q2 2005 and wiped out nearly 90% of the Company's reported $50.6 million in net income reported in FY 2005.

**(2) FY 2006 Financial Projections and Other Statements.**
Plaintiffs allege that from late 2005 and through July 31, 2009, Defendants made false and misleading statements concerning the Company's financial performance and operations in FY 2006, including materially false and misleading revenue projections for the first three quarters of FY 2006; concealed that Powerwave's forecasting system was broken and that, as a result, those projections lacked a reasonable basis; concealed delays and other problems with the implementation of a company-wide Enterprise Resource Planning ("ERP") system; misrepresented the demand for Powerwave's products from its top customers; concealed that the integration of the several companies acquired by the Company, and the transition

1   of manufacturing from high cost countries such as Sweden to lower cost locations,
2   was not proceeding to plan and resulted in lost revenue as Powerwave was not able
3   to manufacture products that customers ordered; and that Defendants' purported
4   risk disclosures failed to adequately immunize their allegedly false projections and
5   other forward-looking statements.

6        18.    The FACC further alleges that the price of Powerwave stock was
7   artificially inflated by Defendants' false and misleading statements and soared to a
8   Settlement Class Period high of $15.76 per share on March 6, 2006. The high
9   price of Powerwave stock also facilitated Defendants' use of the Company's stock
10  as currency to acquire the assets of three other related companies and allowed the
11  Individual Defendants to reap millions in the sale of Powerwave stock and from
12  bonuses tied to the Company's financial performance. In contrast, by the end of
13  the Settlement Class Period, the price of Powerwave stock had lost more than half
14  its value compared to its Settlement Class Period-high price and the public
15  investors in Powerwave stock were damaged thereby.

16       19.    Plaintiffs allege that rather than fully disclosing the actual condition of
17  the Company, Defendants leaked the truth through a series of partial disclosures.
18  For example, on April 3, 2006, Defendants slashed their earlier Q1 2006 revenue
19  guidance and the price of the Company's stock fell almost 22% to close at $10.40
20  per share on the next trading day. On July 31, 2006, Defendants confirmed that
21  demand from one of Powerwave's top customers, Cingular, would be far below
22  prior levels. In response, the price of Powerwave stock dropped another 17% to
23  close at $6.53 per share on August 1, 2006. Next, on October 9, 2006, Defendants
24  shocked the market by further reducing the Company's financial projections for Q3
25  2006. On that news, the price of the Company's stock fell nearly 20% in a single
26  day to a low of $6.30 per share on October 9, 2006.

27       20.    Finally, on November 2, 2006, the end of the Settlement Class Period,
28  Defendants issued a press release announcing the Company's actual financial

results for Q3 2006 and disclosed four separate items of bad news, including that Powerwave:

> 1) failed to meet even its drastically reduced revenue targets;

> 2) reported a net loss for Q3 2006;

> 3) attributed its poor performance to difficulties implementing its ERP system; and

> 4) disclosed for the first time that the Company would take a charge of $20.9 million for the impairment of assets related to the Allgon legacy manufacturing facility and announced a net loss on sale of $25.3 million related to Arkivator.

21.   On these disclosures, the price of Powerwave stock fell $0.19 per share to close at $6.21 per share the following day, November 3, 2006.

22.   Thereafter, four separate complaints were filed alleging violations of the federal securities laws on behalf of purchasers of common stock in Powerwave Technologies, Inc., ("Powerwave" or the "Company") during the period May 2, 2005 through October 9, 2009, inclusive.

**B.   PROCEDURAL BACKGROUND OF THE LITIGATION AND DISCOVERY**

**1.   Motion Practice and the Amended Complaint**

23.   On June 13, 2007, this Court ordered the consolidation of the four actions initially filed, appointed John Both as the Lead Plaintiff and appointed the firm of Weiss & Lurie and The Brualdi Law Firm, P.C., as Plaintiffs' Co-Lead Counsel.

24.   Plaintiffs' Co-Lead Counsel performed extensive research and informal investigation to prepare Plaintiffs' FACC. Preparation of the FACC required extensive consultations with investigators to locate potential witnesses, interviews with those witnesses, legal and factual research regarding Plaintiffs' claims, review of Defendants' public statements and consultations with a forensic

1    accounting consultant to develop the claims based on the alleged misstatement of

2    the Company's FY 2005 financial statements.  Based on the further informal

3    investigation and witness interviews conducted by Co-Lead Counsel, the FACC

4    substantially amended Plaintiffs' claims and plead additional highly detailed facts

5    based on the allegations of several Confidential Witnesses.  Based on the research

6    and extensive investigation by Co-Lead Counsel, the FACC extended the end of

7    the class period from that of the original complaints, October 9, 2006, to November

8    2, 2006 to include later disclosures by Defendants.  The FACC was filed on

9    October 12, 2007.

10        25.    All Defendants moved to dismiss the FACC.  Plaintiffs opposed the

11   motion.  On April 17, 2008, the Court granted in part and denied in part

12   Defendants' motion to dismiss.  This Court sustained the §10(b) and Rule 10b-5

13   claims against Powerwave only, and the §20(a) claims against the Individual

14   Defendants, based on alleged misstatements in Powerwave's FY 2005 financial

15   statements.  However, the Court dismissed the §10(b) and Rule 10b-5 claims

16   against Powerwave and all claims against the Individual Defendants based on

17   Defendants' revenue projections and other statements in 2006, and also dismissed

18   the remaining claims against the Individual Defendants that alleged violations of

19   §10(b) and Rule 10b-5.

20        26.    Defendants moved for reconsideration of the Court's April 17, 2008

21   and raised for the first time arguments whether a corporate defendant may possess

22   the scienter required to sustain a §10(b) claim.  Plaintiffs opposed the motion.  The

23   Court denied Defendants' subsequent motion for partial reconsideration on July 15,

24   2008.

25        27.    On August 29, 2008, Defendants filed their Answer to the FACC.

26        28.    On December 19, 2008, Plaintiffs filed a motion for certification of

27   this action as a class action and for certification of the Lead Plaintiff as the Class

28

1   Representative.  The parties reached an agreement to settle this case shortly
2   thereafter and the Court did not rule on that motion.

3           **2.      Discovery, Investigation and Research**

4           29.    Formal discovery in this case was stayed pursuant to the PSLRA from
5   the inception of the litigation until July 15, 2008 when this Court denied
6   Defendants' motion for reconsideration.  Prior to that ruling, however, Co-Lead
7   Counsel conducted extensive investigations, legal research and informal discovery,
8   including investigations to locate and interview potential witnesses and
9   conferences with forensic accounting consultants to develop Plaintiffs' claims
10  arising from Powerwave's FY 2005 financial statements, which were the only
11  claims sustained by this Court.  Co-Lead Counsel also conferred with damages
12  consultants to develop a damages model and estimate the damages of the
13  Settlement Class.

14          30.    After the mandatory discovery stay was lifted, Plaintiffs' Co-Lead
15  Counsel conducted extensive formal discovery.  Counsel for the parties negotiated
16  a protective order.   Plaintiffs served document requests, interrogatories and
17  requests for admission on Defendants.

18          31.    Defendants also served document requests and interrogatories on the
19  Lead Plaintiff, who prepared and served objections and responses and produced
20  responsive documents.  On January 10, 2009, Defendants took the deposition of
21  the Lead Plaintiff.

22          32.    The parties also prepared and filed their report pursuant to Rule 26(f)
23  of the Federal Rules of Civil Procedure on September 30, 2008 and filed their
24  initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) on
25  December 1, 2008.

26          33.    Between December 11, 2008 and January 9, 2009, Defendants
27  produced approximately 55,000 pages of documents in response to the Lead
28  Plaintiff's document requests.  On December 19, 2008, the Lead Plaintiff filed a

11

1   motion for class certification, which was not ruled upon because the case

2   subsequently settled.

3       34.    The formal discovery, and research and investigation conducted by

4   Plaintiffs' Co-Lead Counsel included: (a) research and investigation to locate

5   witnesses; (b) interviews with witnesses; ( c) conferences with investigators,

6   forensic accounting consultants and damages consultants and review of their

7   reports; (d) the review of thousands of pages of Powerwave's periodic reports filed

8   with the SEC, annual reports, press releases, transcripts of Defendants' conference

9   calls with securities analysts and other public statements by Defendants; (e) review

10  of news reports and articles about Powerwave; (f) review and analysis of

11  Defendants' statements during the Settlement Class Period; (g) factual research and

12  preparation of the FACC, which included research of the applicable law with

13  respect to the claims asserted therein and the potential defenses thereto, and

14  research regarding extending the class period; (h) preparing and serving document

15  requests, interrogatories and requests for admission on Defendants; (i) preparing

16  the Lead Plaintiffs' objections and responses to Defendants' document requests

17  and interrogatories, and producing responsive documents; (j) preparing for and

18  defending the deposition of the Lead Plaintiff; and (k) research and preparation for

19  the mediation and settlement negotiations leading to the proposed Settlement.

20      35.    The prosecution and settlement of this complex case required the

21  extensive use of investigators and consultants in the areas of forensic accounting

22  and damages.  The stringent pleading standards of the PSLRA require the use of

23  investigators to locate potential witnesses, a time-consuming and expensive

24  endeavor for plaintiffs.  Co-Lead Counsel were therefore required to, and did,

25  expend considerable time, effort and expense in working with the investigators and

26  consultants who contributed to the successful pleading and resolution of this case.

27  ///

28  ///

### 3.     Settlement Negotiations

36.     Prior to the mediation, Plaintiffs' Co-Lead Counsel prepared and submitted a detailed confidential mediation brief to the mediator.  The Defendants likewise submitted a confidential mediation brief.  On January 14, 2009, the parties participated in mediation at arm's length under the supervision of U. S. District Judge Nicholas H. Politan (Ret.).

37.     At the mediation session, counsel for Plaintiffs and Defendants presented, among other things, their respective views regarding the merits of the litigation, including the claims, the defenses and the damages sought in the litigation, and the parties' respective likelihood of success.

38.     The parties reached an agreement in principle to settle the case at the close of the mediation.  Counsel for the parties negotiated a Memorandum of Understanding ("MOU") of the terms of the Settlement.  Co-Lead Counsel thereafter spent several months finalizing the terms of the Settlement with counsel for Defendants to ensure that the interests of the Settlement Class were adequately protected.

### 4.     Class Certification

39.     Counsel for the parties stipulated that the Court may, for settlement purposes only, certify a Settlement Class as that term is defined in paragraph V.1.24 of the Stipulation.  Counsel for the parties further stipulated that notice to the persons who acquired the Powerwave common stock at issue be provided with notice as described in paragraphs V.3.1 of the Stipulation informing them that a Settlement Class has been certified and that a settlement has been preliminarily approved.

40.     This Court's June 22, 2009 Notice Order certified the Settlement Class and certified the Lead Plaintiff as the Settlement Class Representative for purposes of the Settlement.

**C.   PRELIMINARY SETTLEMENT APPROVAL AND NOTICE TO THE SETTLEMENT CLASS**

41.   After the MOU was executed, the parties expended considerable efforts in finalizing the terms of the Stipulation.  Plaintiffs' Co-Lead Counsel also spent considerable time and effort in preparing the Notice, the Summary Notice, the Proof of Claim and Release Form and other related documents.  Co-Lead Counsel also conferred extensively with damages consultants and the Claims Administrator to develop the Plan of Allocation and ensure that it satisfies the requirements of the PSLRA and controlling case law, and is a fair and reasonable allocation of the settlement proceeds.

42.   On May 15, 2009, the parties filed the Stipulation.  On the same date, Plaintiffs filed their unopposed application for this Court's preliminary approval of the proposed Settlement, and concurrently lodged the proposed Notice Order, together with the proposed Notice, Proof of Claim and Release Form and Summary Notice to be disseminated to potential Settlement Class Members.  At this Court's request, Plaintiffs re-filed their unopposed application for preliminary settlement approval, and the afore-mentioned exhibits, together with a separate motion for class certification for settlement purposes.

43.   On June 22, 2009, this Court conducted a hearing to consider whether preliminary approval of the Settlement should be granted.  The hearing was attended by Co-Lead Counsel and counsel for the Defendants.  Co-Lead Counsel and counsel for the Defendants answered this Court's questions concerning the Settlement and discussed the settlement schedule.  At the hearing, this Court granted preliminary approval of the Settlement; entered the Notice Order; certified a Settlement Class and certified the Lead Plaintiff as the Settlement Class Representative; approved the form of notice and claim and release forms to be disseminated to potential Members of the Settlement Class; entered the settlement

1  schedule; and set a hearing for October 19, 2009 to consider whether final approval

2  of the Settlement should be granted.

3  **D.   THE FAVORABLE REACTION TO THE SETTLEMENT**

4  44.   As noted above, the Summary Notice was published via *Business*

5  *Wire* on August 24, 2009 and again on September 1, 2009 and Notices of the

6  Settlement were mailed to over 93,000 potential Settlement Class Members to date.

7  The Notice advised potential Settlement Class Members of the Settlement, and also

8  of their right to object to Co-Lead Counsel's request for attorney's fees and

9  reimbursement of expenses incurred in representing the Settlement Class.  The

10 Notice also advised Settlement Class Members of the initial impact that the

11 requested fees and expenses would have on each Settlement Class Member's claim

12 on a per share basis.  To date, no objections to the Settlement, the Plan of

13 Allocation or to Co-Lead Counsel's fee and expense request have been received by

14 Co-Lead Counsel.

15 45.   The absence of objections to date validates both the Settlement and

16 the reasonableness of Co-Lead Counsel's fee and expense request.  The absence of

17 objections is particularly significant because the Settlement Class undoubtedly

18 includes, in addition to individuals, many sophisticated financial institutions such

19 as mutual and pension funds which have counsel available to advise and represent

20 them and assist them in expressing any opposition to the request made here if they

21 so choose.  The reaction of Settlement Class Members to date is an overwhelming

22 endorsement of the Settlement, the plan of allocation and Co-Lead Counsel's fee

23 and expense request, and is compelling evidence that the requested fees and

24 expenses are fair and reasonable.

25 ///

26 ///

27

28

**E.     THE SETTLEMENT IS IN THE BEST INTERESTS OF THE SETTLEMENT CLASS AND WARRANTS APPROVAL**

**1.     The Settlement Was Negotiated by Experienced Counsel**

46.     As noted above, Plaintiffs' Co-Lead Counsel conducted extensive research and investigation prior to, and during, the litigation which resulted in the filing of the highly detailed FACC.  Preparation of the FACC required extensive research of the facts, the applicable law and conferences with investigators and consultants.

47.     Thereafter, when the parties had an understanding of the strengths and weaknesses of their respective cases, they engaged in arm's-length settlement negotiations in an attempt to resolve the litigation.

48.     The terms of the Settlement were fairly and honestly negotiated by all parties with the assistance of a highly respected retired U.S. District Court Judge as mediator.  The conferences with the mediator were very detailed and highly contentious.  During the mediation, Plaintiffs' Co-Lead Counsel explained in detail Plaintiffs' factual and legal arguments and advocated Plaintiffs' positions.  Defendants also advanced their positions.

49.     The Settlement was result of arm's length negotiations by counsel experienced in securities and other complex class action litigation, and was reached only with the assistance of a retired federal judge as mediator.  Even after the Settlement was reached in principle, it took several months for the parties to finalize the negotiations and to iron out the specific language contained in the Stipulation and the exhibits thereto.

**2.     Serious Questions of Fact and Law Presented Formidable Risks of Establishing Liability and Damages**

50.     Serious questions of fact and law present in this litigation support the conclusion that the Settlement is fair, reasonable and adequate to Settlement Class Members.

51.    In assessing the merits of the Settlement, Co-Lead Counsel considered the factual and legal questions at issue.  In light of those issues, Co-Lead Counsel believe that the Settlement obtained for the Settlement Class Members is an exceptional recovery for the following reasons, among others. Defendants asserted that they possessed strong defenses to Plaintiffs' claims and presented those defenses at the mediation.  Defendants are represented by highly experienced and skilled counsel who would be expected to employ every conceivable argument at each stage of the litigation to avoid liability.  Moreover, this Court's April 17, 2008 Order on Defendants' motion to dismiss dismissed a substantial portion of Plaintiffs' claims and eliminated the lion's share of potential recoverable damages. The issues on which the parties disagree include, but are not limited to: (1) the appropriate economic model for determining the amount by which the price of Powerwave common stock was alleged artificially inflated (if at all) during the Settlement Class Period; (2) the amount by which the price of Powerwave common stock was artificially inflated (if at all) during the Settlement Class Period; (3) the effect of various market forces influencing the trading price of Powerwave common stock at various times during the Settlement Class Period; (4) the extent to which external factors, such as general market conditions, influenced the trading price of Powerwave common stock at various times during the Settlement Class Period; (5) the extent to which the various matters that Plaintiffs alleged were materially false and misleading influenced (if at all) the trading price of Powerwave common stock at various times during the Settlement Class Period; (6) the extent to which the various allegedly material adverse facts that Plaintiffs allege were concealed during the Settlement Class Period influenced (if at all) the trading price of Powerwave common stock at various times during the Settlement Class Period; and (7) whether the statements made or the facts allegedly concealed were material or otherwise actionable under the federal securities laws.  It is unclear how those issues would have been resolved by this Court and at trial.

17

52.    The Lead Plaintiff and Co-Lead Counsel have taken into account the uncertain outcome and the risk of continuing litigation, as well as the difficulties and delays inherent in such continuation.  The Lead Plaintiff and Co-Lead Counsel are mindful of the inherent problems of proof under, and possible defenses to, the federal securities law violations and other claims asserted in the FACC.

53.    Plaintiffs faced numerous risks and obstacles inherent in their motion for class certification and in Defendants' anticipated motion for summary judgment.  Those complex and fact-intensive motions would be aggressively litigated and it is unclear how such motions would be decided by this Court.  Plaintiffs wold also face risks and obstacles if the case continued to trial.  While Co-Lead Counsel believe that Plaintiffs' claims were meritorious, they recognize that elements of Plaintiffs' securities fraud claims, such as loss causation, scienter and damages, would have required a battle of the experts with no assurance that Plaintiffs would prevail, and that a jury finding of liability is never assured, and even assuming liability is found, of damages, Plaintiffs have no assurance that a jury would have found that Plaintiffs proved that the Settlement Class suffered damages attributable to Defendants' conduct.

54.    Were this Settlement not achieved, the Settlement Class faced continued litigation, with ultimate success for the Settlement Class far from certain.  Instead, Plaintiffs' Co-Lead Counsel successfully negotiated an exceptional recovery for the Settlement Class under difficult circumstances.  Settlement Class Members will thus receive the benefits of the successful resolution of the litigation without many more years of delay and uncertainty.  Settlement at this point in the litigation, before even more significant sums were expended on protracted and hotly contested litigation, was prudent to maximize the proceeds available and thereby maximize shareholder recovery.

///

///

### 3.   The Judgment of the Parties That the Settlement is Fair, Reasonable and Adequate Provides Additional Support for the Approval of the Settlement

55.   The Settlement is the result of substantial, good faith arm's-length negotiations, with counsel for the parties steadfastly maintaining their respective positions on the merits of the litigation.

56.   Based on a thorough analysis of the defenses that Defendants were reasonably expected to assert, and did assert, Plaintiffs' investigation and discovery and the arguments presented by counsel for Defendants relating to the claims asserted by Plaintiffs, Co-Lead Counsel submit that the Settlement is a highly favorable result for the Settlement Class.

57.   It is the considered and informed judgment of Co-Lead Counsel, based on all the proceedings to date, the discovery conducted, the discussion that occurred during mediation and subsequent negotiations, and their extensive experience in litigating class actions under the federal securities laws that the Settlement now before the Court is fair, reasonable and adequate, is in the best interests of the Settlement Class Members and should be approved by this Court.

### F.   CO-LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES IS REASONABLE AND SHOULD BE APPROVED

58.   Co-Lead Counsel will apply to this Court, at the conclusion of the Settlement Hearing, for an award of attorneys' fees for services rendered on a wholly contingent basis of 33-1/3% of the Settlement Fund, or $1,050,000, plus litigation expenses in the amount of $275,418.49, together with interest earned on said sums at the same rate, and for the same periods, as earned by the Settlement Fund. Such awards as may be granted by the Court will be paid from the Settlement Fund.

59.   The fee request is warranted in light of the substantial benefits conferred on the Settlement Class as a result of Co-Lead Counsel's efforts, the risks undertaken, the quality and extent of the services performed, the duration and

1 extent of the litigation and the contingent nature of the litigation.  The expenses for

2 which reimbursement is sought were necessary for the conduct of the litigation, are

3 reasonable in amount and are in fact less than the range set forth in the Notice

4 mailed to Settlement Class Members

5     60.   Co-Lead Counsel undertook this litigation entirely on a contingency

6 basis over a period of more than two and a half years and have incurred significant

7 risks and expenses in achieving an exceptional result for the benefit of the

8 Settlement Class.  Co-Lead Counsel have received no compensation during the

9 time this litigation has been pending and the attorneys primarily responsible for

10 this case devoted a substantial portion of their time to this case to the exclusion of

11 other matters.

12     61.   The requested fee is justified for all the reasons set forth herein and in

13 the fee memorandum, and in Plaintiffs' Confidential Memorandum in Support of

14 Motion for Final Settlement Approval, filed concurrently, particularly in light of

15 the significant effort required and the exceptional recovery achieved.

16     62.   The following additional factors further support the fee request:

17     **1.   The Fee Award is a Reasonable Percentage of the Recovery**

18     63.   The requested fee is fair and reasonable when considered as a

19 percentage of the recovery.

20     **2.   The Fee Recognizes the Benefits Conferred on the
21     Settlement Class by Co-Lead Counsel's Efforts**

22     64.   The requested fee is an outright bargain based on the time and effort

23 necessarily expended by Co-Lead Counsel to achieve the successful resolution of

24 this litigation.  Co-Lead Counsel have expended over 3,700 hours working on the

25 litigation for nearly two and a half years.  While courts routinely consider whether

26 to apply a multiplier to counsel's lodestar, Co-Lead Counsel's fee request of

27 $1,050,000 actually is less than half of their total lodestar of $2,350,305.

28 Accordingly, a negative multiplier is applied to their lodestar.  Co-Lead Counsel's

20

efforts are summarized herein and in the memorandum in support of final

settlement approval filed concurrently herewith. At all times, Co-Lead Counsel

litigated this action in a manner that maximized the efficiency of their efforts in the

prosecution of the litigation.

65.    The time expended by Co-Lead Counsel was reasonable and

necessary, particularly given the complexity of the litigation, and the defenses

presented on issues of law and fact by Defendants, while ensuring that the

Settlement Class Members' interests were not compromised.

### 3.    The Risks Faced and Overcome by Co-Lead Counsel Justify the Requested Fee

66.    This case was, from any perspective, a risky case given the stringent

pleading standards imposed by the PSLRA and the unique facts of this case. The

risks faced, and overcome, by Co-Lead Counsel detailed herein further support the

settlement amount and the requested fee and expense award.

67.    The quality of opposing counsel also is important in evaluating the

quality of work done by Co-Lead Counsel and the risks overcome. Defendants

were ably represented by very skilled and capable counsel from a prominent

national law firm with well-deserved and nationwide reputations for vigorous

advocacy in the defense of complex federal securities litigation. In the face of

strong opposition by highly skilled defense counsel, Co-Lead Counsel assembled a

case that survived, in part, Defendants' motion to dismiss. Co-Lead Counsel also

exercised discretion and professional judgment in evaluating the merits and the

risks presented and advising the Lead Plaintiff to settle the case to maximize the

recovery to the Settlement Class, particularly in light of the dismissal of a

substantial portion of Plaintiffs' claims and the problems of proof Plaintiffs faced

in establishing, *inter alia*, the required elements of causation, scienter and

damages.

///

1

### 4.   The Contingent Nature of the Requested Fee

68.   This litigation was undertaken by Co-Lead Counsel on a wholly contingent basis.  Co-Lead Counsel understood that they were taking on a complex, lengthy and expensive litigation with no guarantee of ever being compensated for the investment of time and money the case would required.  In undertaking that responsibility, Co-Lead Counsel was obligated to assure that sufficient attorney resources were dedicated to the prosecution of the litigation and that funds were available to compensate staff and to pay for the very considerable expenses required to investigate and litigate a complex case like this one.  Unlike the defense bar, whose attorneys are paid regularly for each hour of service and are reimbursed on a current basis for expenses incurred, plaintiffs' lawyers normally have no steady flow of income.  The financial burden on contingent counsel is far greater than on a firm that is paid on an ongoing basis.  Moreover, changes in the law through legislation or judicial decree can adversely impact pending litigation.  Because discovery of facts unknown when the case commenced or a significant change in the law during the pendency of the litigation, highly professional efforts of members of the plaintiffs' bar product no result for the class or corporation sued for, and hence, no fee for counsel.

69.   Court repeatedly have held that it is in the public interest to have experienced and able counsel enforce the securities laws and regulations pertaining to public companies.  Vigorous enforcement of the federal securities laws can occur only if private plaintiffs can obtain parity in representation with that available to large corporate interests.  If this important public policy is to be carried out, the courts must award fees that will adequately compensate private plaintiffs' counsel, taking into account the enormous risks undertaken with a clear view of the economics of a securities class action.

///

///

22

### 5. The Expertise, Reputation and Ability of Co-Lead Counsel

70. The expertise and experience of Co-Lead Counsel is an important factor in assessing the adequacy of a settlement and in setting a fair fee. Co-Lead Counsel are experienced and skilled practitioners in the securities litigation field, responsible for significant settlements and legal decisions that enable litigation such as this to be successfully prosecuted. *See* Exhibit A attached hereto.

71. This is particularly relevant in the context of securities class actions where defendants retain highly experienced defense attorneys from prestigious law firms. Despite great risk, the dismissal of a substantial portion of Plaintiffs' claims and the problems of proof Plaintiffs faced in establishing certain of the required elements of their claims, this Settlement of $3.15 million in cash is an exceptional benefit obtained for the Settlement Class.

### 6. Co-Lead Counsel's Expenses are Reasonable and Necessary

72. The expenses which have been incurred, and for which reimbursement is sought, were necessary for the conduct of the litigation, are reasonable in amount and thus should be reimbursed from the Settlement obtained for the Settlement Class. These expenses are those which normally are charged to paying clients: fees for consultants and investigators, filing fees, postage and courier services, computer and database research, photocopying and facsimile charges, overnight delivery and messenger services, long-distance phone calls and travel expenses for court appearances, mediation and discovery. The requested expenses are reasonable, particularly in light of the vigorous prosecution of this case for more than two and a half years.

73. The bulk of Co-Lead Counsel's out-of-pocket expenses relate to expenses incurred from the retention of investigators and consultants in the fields of forensic accounting and damages. As described above, Co-Lead Counsel expended extensive efforts in working with investigators to locate potential witnesses. Co-Lead Counsel also worked extensively with forensic accounting

23

consultants to develop and plead Plaintiffs' claims arising from the Company's alleged false and misleading FY 2005 financial statements with the particularity required by the stringent pleading standards of the PSLRA; indeed, those were the only claims sustained by this Court's April 17, 2008 order on Defendants' motion to dismiss. Plaintiffs' damages consultants were critical in developing the damages model and damages estimates that guided this litigation, and in formulating the plan of allocation of the Settlement proceeds. The work undertaken by these investigators and consultants was critical in advising Co-Lead Counsel and in counsel's preparation for and participation in the mediation that led to this Settlement.

74. Another component of Plaintiffs' expenses includes computerized factual and legal research services such as Lexis/Nexis and other online research services. The prosecution of this type of securities class action claims revolves around the statements made by defendants during the class period. As such, Co-Lead Counsel were required to perform factual research concerning, among other things, Powerwave's SEC filings, trade and industry journal, securities analysts' reports and newspaper articles. Moreover, the law in this complex field is constantly evolving and required up-to-date legal research in order to effectively prosecute cases like this one. It is standard practice for attorneys to use Lexis/Nexis to assist them in researching legal and factual issues, and the use of such tools creates efficiency in litigation and saves the class time and money.

75. Co-Lead Counsel also incurred travel expenses in connection with trips for court appearances, discovery and mediation. As with the other categories of expenses, travel expenses were necessary and reasonable in amount, and are properly charged against the common fund created.

76. The remaining costs for which Plaintiffs Co-Lead Counsel seek reimbursement include court filing fees, messenger services, copies, faxes, postage

24

1  and telephone costs which are routinely reimbursed in common fund cases like this

2  one.

3  **G.      CONCLUSION**

4  77.     This Settlement was reached after substantial investigation, research,

5  informal and formal discovery, conferences with investigators and consultants,

6  hard-fought litigation and vigorous arm's-length bargaining.  Based on an

7  understanding of, among other things, the unique facts and circumstances of this

8  case, the principles of law applicable to Plaintiffs' claims and the relative risks of

9  continued litigation, Co-Lead Counsel believe that this Settlement represents a

10  favorable result for the Settlement Class and should be approved by the Court.  Co-

11  Lead Counsel also respectfully request that their application for attorneys' fees and

12  expenses be granted.

13  I declare under penalty of perjury under the laws of the United States of

14  America that the foregoing is true and correct.  Executed this 13th day of October,

15  2009, at Los Angeles, CA.

16

17

18                                              ___/s/ - Jordan L. Lurie___

19                                              JORDAN L. LURIE

20

21

22

23

24

25

26

27

28

25

EXHIBIT A

# WEISS & LURIE

Suite 2300
10940 Wilshire Boulevard
Los Angeles, CA 90024
TEL. (310) 208-2800
FAX (310) 209-2348

New York . Los Angeles

## FIRM BIOGRAPHY

The law firm of Weiss & Lurie has offices in New York City and Los Angeles. In courts throughout the United States, the firm has litigated hundreds of stockholder class actions brought for violations of federal securities laws and shareholder class and derivative actions brought for violations of corporate and fiduciary duties. The firm also represents consumers in several class actions in the area of consumer fraud and unfair practices. The firm has served as lead counsel in numerous actions on behalf of defrauded institutions and individuals for whom it has recovered well over a billion dollars.

Numerous courts have commended the firm for its expertise and ability:

In Brody v. U.S. West, et al., No. CV-4142 (D. Colo.), Judge Coughlin observed that the case "was litigated by extremely talented lawyers" and "it took a great deal of skill to get to the point of trial." Referring to the firm, Judge Coughlin stated "there wasn't any other lawyers in the United States that took the gamble that these people did. Not one other firm anywhere said, 'I am willing to take that on'...[the shareholders are] fortunate that they had some lawyers that had the guts to come forward and do it...I had the opportunity to watch these attorneys throughout this period of time when I had this case and the [lawyers'] ability is terrific."

In In re McLeodUSA Inc. Securities Litigation, No. C02-0001-MWB (N.D. Iowa), Chief Judge Mark Bennett stated at the final approval hearing: "I thought you all did a great job in this litigation" and "I think very highly of the work that all the lawyers did in the case, and [I am] pleased that you were able to get it resolved."

**EXHIBIT A - Page 026**

In <u>Ellison v. American Image Motor, et al.</u>, Civil Action No. 97-3608 (S.D.N.Y.), Judge Chin, approving the settlement and fee application, commented that "It has been many years.  The case was hard fought, very capable counsel on both sides, and I saw counsel many times.  It was a hard fought case.  It was a difficult case."...  "It's probably not said very often, but in this case I think plaintiffs' counsel are being under paid." ...  "Counsel did a great job..."

In <u>In re United Telecommunications, Inc. Securities Litigation</u>, No. 90-2251-0 (D. Kan.), Judge O'Conner stated "the court finds that plaintiffs' counsel were experienced and qualified attorneys with outstanding professional reputations in securities litigation who ably and zealously prosecuted the instant case on behalf of the class."

In <u>In re VeriFone Inc. Securities Litigation</u>, No. C-93-3640 DCJ (N.D. Cal.), Judge Jensen stated "I think the case was handled extremely well, extremely professionally, so I think you've done very well."

In <u>In re Western Digital Securities Litigation</u>, SACV 91-375(A) GLT (RWRx) (C.D. Cal.), Judge Taylor complimented plaintiffs' attorneys' work in the action, specifically noting "the caliber of the work involved [and] the quality of the attorneys involved."

In <u>Georgallas v. Martin Color-Fi, Inc.</u> Civil Action No. 6:95-06483 (D.S.C.), Judge Anderson expressed "the utmost respect" for the work of the firm.

In <u>Bash v. Diagnostek</u>, CV 94-794 M (D.N.M.), Judge Black said the case provided "a model for how commercial litigation should be conducted and can be resolved."

In <u>In re National Medical Enterprises Litigation</u>, CV 93-5223-TJH and CV 93-5313-TJH (C.D. Cal.), Judge Hatter summed up the settlement hearing by saying, "I want to again thank counsel for the work that you put into this and hopefully it's a settlement for which the claimants themselves will be appreciative of the results."

Page 2 of  10

**EXHIBIT A - Page 027**

In In re Santa Fe Southern Pacific Corporation, Consold. Civ. No. 9523 (Del. Ch.), Chancellor Allen of the Delaware Chancery Court approved a settlement and cited the creativity and sophistication of plaintiffs' counsel.

Some of the actions which highlight the firm's accomplishments are:

## CASES IN WHICH WEISS & LURIE WAS LEAD OR CO-LEAD COUNSEL

Jordan v. California Department of Motor Vehicles (Sacramento Cal.): The California Court of Appeal, Third Appellate District, held that the State of California's $300 smog impact fee was unconstitutional, paving the way for the creation of a $665 million fund and full refunds, with interest, to 1.7 million motorists.

In re Geodyne Resources, Inc. Securities Litigation (Harris Cty. Tex.): A recovery (including related litigation) totaling over $200 million was obtained for the class.

Freddie Mac Derivative Litigation (S.D.N.Y.): Approximately $100 million was recovered for the Company and significant corporate governance measures were adopted.

Brody v. U.S. West, et al., (D. Colo.): A recovery of $50 million was obtained for the class.

In re Tenneco Securities Litigation (D. Tex.): A recovery of $50 million was obtained for the class.

In re Community Psychiatric Center Securities Litigation (C.D. Cal.): A recovery of $42.5 million was obtained for the class.

In re Crazy Eddie Securities Litigation (S.D.N.Y.): A recovery of $42 million was obtained for the class.

In re Apria Healthcare Group Securities Litigation (Orange County Cal.): A recovery of $42 million was obtained for the class.

In re Canon Group Securities Litigation (C.D. Cal.): A recovery of $33 million was obtained for the class.

In re Platinum Software Securities Litigation (C.D. Cal.): A recovery of $32 million was obtained for the class.

In re McLeodUSA Inc. Securities Litigation, (N.D. Iowa): A recovery of $30 million was obtained for the class.

In re United Telecommunications Securities Litigation (D. Kan.): A recovery of $28 million was obtained for the class.

In re Bergen Brunswig Corp. Sec. Litig., (C.D. Cal.): A recovery of $27.9 million was obtained for the class.

In re Bank of New York Derivative Litigation (Sup. Ct. NY): A recovery of $26.5 million was obtained for the Company and significant corporate governance measures were adopted.

EXHIBIT A - Page 028

In re FirstEnergy Shareholder Derivative Litigation (N.D. Ohio): A recovery of $25 million was obtained for the Company and significant corporate governance measures were adopted.

In re Vodafone Group, PLC Securities Litigation (S.D.N.Y.): A recovery of $24.5 million was obtained for the class.

In re Abbey Healthcare Securities Litigation (C.D. Cal.): A recovery of $20.5 million was obtained for the class.

Feinberg v. Hibernia Corp. (D. La.): A recovery of $20 million was obtained for the class.

In re Southern Pacific Funding Corp. Sec. Litig., (D. Or.): A recovery of $19.5 million was obtained for the class.

In re Aura Systems, Inc. Securities Litigation (C.D. Cal.): A recovery of $18 million was obtained for the class.

In re MK Rail Securities Litigation (D. Idaho):  A recovery of $14.65 million was obtained for the class.

In re California Microwave Securities Litigation (N.D. Cal.): A recovery of $14 million was obtained for the class.

In re KeySpan Corporation Securities Litigation (E.D.N.Y.): A recovery of $13.75 million was obtained for the class.

In re Elscint Ltd Securities Litigation (D. Mass.): A recovery of $12 million was obtained for the class.

Bash v. Diagnostek (D.N.M.): A recovery of $11.7 million was obtained for the class.

In re Megafoods Securities Litigation (D. Ariz.): A recovery of $12 million was obtained for the class.

In re GTECH Securities Litigation (D.R.I.): A recovery of $10.25 million was obtained for the class.

In re Complete Management, Inc. Securities Litigation (S.D.N.Y.): A recovery of $10.15 million was obtained for the class.

Berlinsky v. Alcatel (S.D.N.Y.): A recovery of $8.8 million was obtained for the class.

Lopez v. Checkers Drive-In Restaurants, Inc. (M.D. Fl.): A recovery of over $8.175 million was obtained for the class.

In re Mesa Airlines Securities Litigation (D.N.M.): A recovery of $8 million was obtained for the class.

In re Resound Securities Litigation (N.D. Cal.): A recovery of $8 million was obtained for the class.

In re Castle Energy Corp. Securities Litigation (C.D. Cal.) A recovery of $7.5 million was obtained for the class.

In re Western Digital, Inc. Securities Litigation (C.D. Cal.): A recovery of $6.75 million was obtained for the class.

Page 4 of  10

In re Circle K Securities Litigation (D. Ariz.): A recovery of $6 million was obtained for the class.

In re Aura Systems, Inc. Securities Litigation (C.D. Cal.): A recovery of $5.55 million was obtained for the class.

In re Ascend Communications Securities Litigation (C.D. Cal.): A recovery of $5.45 million was obtained for the class.

In re Southmark Securities Litigation (D. Tex.): A recovery of $5 million was obtained for the class.

In re WCT Securities Litigation (C.D. Cal.): A recovery of $5 million was obtained for the class.

In re Sumitomo Bank of California Securities Litigation (San Francisco Sup. Ct.): A recovery of $4.95 million was obtained for the class.

In re NextLevel Systems, Inc. Securities Litigation (N.D. Ill.): A recovery of $4.6 million was obtained for the class.

In re Shopping.com Securities Litigation (C.D. Cal.): A recovery of $4.5 million was obtained for the class.

In re Denver Bonds Securities Litigation (D. Colo.): A recovery of $4.5 million was obtained for the class.

In re Molecular Dynamics, Inc. Securities Litigation (N.D. Cal.): A recovery of $4 million was obtained for the class.

In re Party City Corp. Securities Litigation (D.N.J.): A recovery of $3.8 million was obtained for the class.

In re Iwerks Securities Litigation (C.D. Cal.): A recovery of approximately $3.5 million was obtained for the class.

In re Davstar, Inc. Securities Litigation (C.D. Cal.): A recovery of $3.4 million was obtained for the class.

In re Trident Securities Litigation (N.D. Cal.): A recovery of $3.15 million was obtained for the class.

In re Twinlab Corp. Securities Litigation (E.D.N.Y.): A recovery of $3 million was obtained for the class.

In re Offshore Pipelines Securities Litigation (S.D.N.Y.): A recovery of $3 million was obtained for the class.

Gorga v. Uniroyal Chemical Corp. (Sup. Ct. Conn.): A recovery of $3 million was obtained for the class.

In re Amylin Pharms. Securities Litigation (S.D. Cal.):  A recovery of $2.1 million was obtained for class.

**CLASS AND DERIVATIVE ACTIONS HANDLED BY WEISS & LURIE WHERE A SIGNIFICANT BENEFIT WAS OBTAINED FOR THE COMPANY AND/OR THE SHAREHOLDERS**

Page 5 of 10

In re Santa Fe Southern Pacific Corporation (Del. Ch.).

In re Genentech Shareholder Litigation (N.D. Cal.).

In re Beverly Enterprises Shareholder Litigation (Del. Ch.).

In re Tandon Computer Shareholder Litigation (C.D. Cal.).

In re Sears Shareholder Litigation (D. Ill.).

In re Xoma Shareholder Litigation (N.D. Cal.).

In re Castle Energy Corp. Shareholder Litigation (C.D. Cal.).

In re Times-Mirror, Inc. Shareholder Litigation (C.D. Cal.).

In re Lockheed Corp. Shareholder Litigation (C.D. Cal.).

In re Nexgen Securities Litigation (N.D. Cal.).

In re GT Greater Europe Securities Litigation (N.D. Cal.).

In re Pairgain Securities Litigation (S.D. Cal.).

In re AMI Securities Litigation (L.A. Superior).

Wallace v. Fox, et al. (Northeast Utilities) (D. Conn.).

### BRIEF BIOGRAPHIES OF WEISS & LURIE ATTORNEYS

**JOSEPH H. WEISS** is a 1972 graduate of Columbia University Law School, where he was an editor of the Law Review. He is also a 1972 graduate of Columbia University Graduate School of Business from which he obtained a Masters in Business Administration. Mr. Weiss is a member of the Bar of the State of New York and is admitted to practice in the Southern District of New York, the Eastern District of New York, the Courts of Appeal for the First, Second, Third, Ninth and Federal Circuits, and has been admitted to practice in numerous other federal and state courts. He specializes in prosecuting class and derivative actions throughout the United States and has been appointed lead counsel and successfully concluded numerous such actions.

**JORDAN L. LURIE** is a partner in the Los Angeles office. Mr. Lurie received his law degree in 1987 from the University of Southern California Law Center where he was Notes Editor of the University of Southern California Law Review. He received his undergraduate degree from Yale University in 1984 (*cum laude*). Mr. Lurie has participated in all aspects of class actions. Mr. Lurie is the co-author of "Postponing a Municipal Court Election: The November Election Provision of Government Code Section 71180(b)," California Courts Commentary, November 1989; co-author of "Chapter 54 - Consent Judgment" and "Chapter 55 - Submitted Case," Civil Procedure Before Trial (1990), published by California Continuing Education of the Bar; and author of "Rx for Pharmacy Malpractice: California's New Duty to Consult," CEB Civil Litigation Reporter, December 1991.

Mr. Lurie also has been a featured speaker at California Mandatory Continuing Legal Education seminars regarding securities fraud and class actions. Mr. Lurie is a member of the State Bar of California and is admitted to practice before the United States District Courts for the Northern, Southern, Central and Eastern Districts of California.

**MOSHE BALSAM** is a senior associate in the New York office. He graduated from Brooklyn Law School in 1981 with a specialty in securities law. He was admitted to the New York State Bar in 1982. Mr. Balsam is also a member of the bars of the United States District Courts for the Southern and

Page 7 of 10

Eastern Districts of New York and has been admitted to practice before various other state and federal courts.  He has participated in all aspects of numerous class action and shareholder derivative cases.

**DAVID C. KATZ** is a senior associate in the New York office.  He is a 1988 Graduate of Benjamin N. Cardozo School of Law.  He is admitted to the New York State Bar and the United States District Courts for the Southern and Eastern Districts of New York.  He is experienced in all aspects of securities class and derivative litigation at both the trial and appellate level, and leads the firm's efforts devoted to enhancing corporate governance.

**JOSEPH D. COHEN** is a senior associate in the New York office.  He graduated from Case Western Reserve University School of Law in May 1989, where he received an award for excellence in Business Law.  He received an LL.M in Corporate law from New York University in 1990.  Mr. Cohen has co-authored several articles:  "Mitsubishi and Shearson: A Misplaced Trust in Arbitration," New England Business Law Journal, 1990; "The Effects of Tax Reform on Golden Parachutes," North Atlantic Regional Business Law Review, August 1988; "Dual Class Common Stock and Its Effects on Shareholders and Legislators," American Business Law Association National Proceedings, August 1988.

Mr. Cohen is admitted to the State Bars of California and Rhode Island, as well as the District of Columbia and the United States District Courts for the Central, Southern and Northern Districts of California.

**JAMES E. TULLMAN** is an associate in the New York office.  He graduated from the University of Delaware (B.A., 1988), and The Jacob D. Fuchsburg Law Center of Touro College (J.D., 1991), where he was an editor of the Journal of the Suffolk Academy of Law, Touro College, 1990-1991. Mr. Tullman is admitted to the state bars of Connecticut, New York, and California, as well as the United States District Courts for the Southern and Eastern Districts of New York,  the Northern, Central and Southern Districts of California, and the United States Court of Appeal for the Ninth and Third Circuit.

**RICHARD A. ACOCELLI** is an associate in the New York Office.  He received his law degree in 1990 from St. John's University School of Law.  He is admitted to the State Bar of New York and the

Page 8 of  10

United States District Courts for the Southern and Eastern Districts of New York and the Eastern District of Michigan.

**JACK I. ZWICK** is an associate in the New York Office.  He received his law degree in 1993 from Benjamin N. Cardozo School of Law.  He is admitted to the New York State Bar and the United States District Courts for the Southern and Eastern Districts of New York.

**LEIGH A. PARKER** is an associate in the Los Angeles office.  She graduated from Indiana University (B.A. 1981), received her M.B.A. from the American Graduate School of International Management in 1982 and graduated from Loyola Law School in 1993, where she was a member of the Scott Moot Court Honors Board.  She is admitted to the Bar of the State of California and the United States District Courts for the Central, Northern, Southern and Eastern Districts of California, as well as the Ninth Circuit Court of Appeals.

**MARK D. SMILOW** is an associate in the New York office.  He graduated Benjamin N. Cardozo School of Law in 1993, *magna cum laude*, where he was a member of the Cardozo Law Review. He is admitted to the New York and New Jersey State Bars, and the United States District Courts for the Southern and Eastern Districts of New York.  He has also been admitted in other courts throughout the nation for particular cases.  He has litigated all aspects of numerous class, shareholder, derivative and consumer class actions in both trial and appellate courts.

**ZEV B. ZYSMAN** is an associate in the Los Angeles office. He graduated from the University of Southern California (B.A. 1991), and received his law degree from the University of California, Hastings College of the Law (J.D. 1994). Mr. Zysman is admitted to the Bar of the State of California and the United States District Court for the Central District of California.

**JULIA J. SUN** is a junior associate in the New York office.  She received her B.A. in Political Science from Barnard College, Columbia University in 1998 and her J.D. from Brooklyn Law School in 2003.  Ms. Sun is admitted to the Bar of the State of New York and the United States District Courts for the Southern and Eastern Districts of New York.

**JOSHUA M. RUBIN** is a junior associate in the New York office.  He received a Bachelor of Talmudic Law from Ner Israel Rabbinical College in 2002 and his J.D. from Benjamin N. Cardozo School of Law in 2005.  Mr. Rubin is admitted to the Bar of the State of New York and the United States District Courts for the Southern and Eastern Districts of New York.  He is also an arbitrator qualified by the New York State Dispute Resolution Association and an emergency medical technician.

EXHIBIT B

# Powerwave Technologies, Inc.

Case No.: SACV-07-0065-PSG (MLGx)

## WEISS & LURIE LODESTAR
*From Inception through October 13, 2009*

**Status:**
(P) Partner
(A) Associate
(PL) Paralegal
(CL) Clerk

| NAME (Status) | HOURLY RATE | 1 | 2 | 3 | 4 | 5 | TOTAL HOURS | LODESTAR TOTAL |
|---|---|---|---|---|---|---|---|---|
| **ATTORNEYS** | | | | | | | | |
| JLL (P) | $750 | 51.00 | 20.75 | 174.75 | 19.75 | 138.25 | **404.50** | $303,375.00 |
| LAP (A) | $595 | 156.00 | 218.00 | 699.00 | 19.00 | 346.00 | **1438.00** | $855,610.00 |
| JE (A) | $350 | 0.00 | 7.25 | 31.75 | 0.00 | 0.00 | **39.00** | $13,650.00 |
| | | | | | | | | |
| **SUB-TOTAL:** | | | | | | | **1881.50** | **$1,172,635.00** |
| | | | | | | | | |
| **PARALEGALS/CLERKS** | | | | | | | | |
| JEE (PL) | $270 | 0.00 | 0.00 | 66.00 | 4.00 | 0.00 | **70.00** | $18,900.00 |
| SM (PL) | $270 | 0.00 | 1.75 | 3.50 | 0.00 | 0.00 | **5.25** | $1,417.50 |
| DRM (PL) | $270 | 5.00 | 0.25 | 17.50 | 0.00 | 7.25 | **30.00** | $8,100.00 |
| JWS (CL) | $135 | 0.00 | 0.00 | 25.50 | 0.00 | 0.00 | **25.50** | $3,442.50 |
| KKL (CL) | $135 | 0.00 | 23.00 | 0.00 | 0.00 | 0.00 | **23.00** | $3,105.00 |
| | | | | | | | | |
| **SUB-TOTAL:** | | | | | | | **153.75** | **$34,965.00** |
| | | | | | | | | |
| **TOTALS** | | | | | | | **2035.25** | **$1,207,600.00** |

1) **Fact Research/Preparation of Amended Complaint**: this category includes: review of public documents; interviews with potential witnesses; consultation with accounting and damages consultants; factual and legal research regarding potential claims; research and drafting of amended complaint; filing and service of amended complaint and related documents.

2) **Discovery**: this category includes formal and confirmatory discovery, early meeting of counsel regarding discovery and Rule 26 disclosures; preparation of initial disclosures; conferences with defense counsel and preparation and filing of the parties' FRCP 26(f) report; preparation for scheduling conference; research re: electronic discovery; preparation of document requests, requests for admissions and interrogatories; review of responses thereto; preparation of Lead Plaintiff's discovery responses; conferences with defense counsel regarding Lead Plaintiff's discovery responses; preparation for and attendance at deposition of the Lead Plaintiff; research and negotiation with defendants regarding protective order; consultations with damages consultants; review documents produced by defendants; confirmatory interview with Powerwave executive.

3) **Law & Motion**: this category includes: legal and factual research and preparation/filing of motion for appointment of Lead Plaintiff; legal and factual research and preparation of oppositions to competing motions for appointment as Lead Plaintiff; preparation for hearing on competing motions for appointment of Lead Plaintiff; legal and factual research and preparation of opposition to defendants' motion to dismiss; legal and factual research and preparation of opposition to defendants' motion for reconsideration; legal and factual research and preparation of motion for class certification.

4) **Court Appearances**: this category includes appearances, and travel to/from appearances, for the following hearings: motion for appointment of Lead Plaintiff; scheduling conference; motion to dismiss; motion for preliminary settlement

5) **Settlement**: this category includes negotiation and preparation of Stipulation of Settlement; research and consultation with damages consultants and claims administrator regarding plan of allocation; preparation of notice of pendency of class action and settlement; preparation of claim form; preparation of summary notice; legal and factual research re: motion for preliminary approval and preparation of pleadings and exhibit in support; preparation for hearing on motion for preliminary settlement approval; conferences with claims administrator regarding settlement administration; conferences with escrow agent and negotiation of escrow agreement; conferences with defense counsel re: Powerwave shareholder list and provide same to claims administrator; communications with potential class members; research and preparation of pleadings and exhibits in support of motion for final settlement approval.

EXHIBIT C

NERA
Economic Consulting

Securities Class Actions



# Recent Trends in Securities Class Action Litigation: 2003 Early Update

by Elaine Buckberg, Todd Foster, and Stephanie Plancich
February 2004

w w w . n e r a . c o m

How Markets Work™

EXHIBIT C - Page 037



Recovery rates are a better measure of compensation to investors than are dollar settlement values. In 2003, the median percentage of investor losses paid in settlement remained near its all-time low at 2.8%, up from 2.7% in 2002, but down from a high of 7.2% in 1996. That said, even these low recovery rates will overstate investor compensation to the extent that the company itself pays the settlement.' If the company pays directly, any current shareholder who was also a damaged shareholder during the class period, will gain from the settlement payment he receives but this gain will be offset because the company's contribution to the settlement will reduce the value of his existing shareholding in the company.

## Conclusion

The first year of stock market recovery after the 2000-2002 bear market has brought some changes in securities class action trends. With the laddering and analyst filing deadlines now past, filings have returned to their post-PSLRA norm. The passage of three years since the stock market peak means that more cases settling have class periods that began in the bull market and ended in the bear market, driving up average investor losses. These high investor loss cases explain the handful of very high settlements observed in 2003, while at the same time both mean and median settlements fell by approximately 15%.

---

' The company's D&O insurance providers contribute to many settlements. This contribution may result in a subsequent increase in the company's D&O insurance premia. It is relatively uncommon that individual defendants contribute to a settlement.

EXHIBIT C - Page 038

EXHIBIT D



NERA

Recent Trends in Shareholder
Class Action Litigation:
Beyond the Mega-Settlements,
is Stabilization Ahead?

Ronald I. Miller, Ph.D.
Todd Foster
Elaine Buckberg, Ph.D.

## Investor Losses Have Risen More Rapidly Than Settlements—But May Be Stabilizing

▨ Median Investor Losses ($MM)    ◆ Median Ratio of Settlement to Investor Losses



Settlements are greater when defendants have deeper pockets. For each 1% increase in the company's market capitalization on the day after the end of the class period, the typical settlement will increase by more than 0.1%. If the company's fortunes change before settlement, there may be less money to go around. If the defendant firm is in bankruptcy or has a stock price of less than $1 per share at settlement, the settlement will typically be approximately 25% lower. In addition, the involvement of outside co-defendants can lead to larger settlements. In cases with an accounting firm co-defendant, settlements increase by more than three-quarters, controlling for all other characteristics of the case.

Cases with accounting allegations result in higher settlements for other reasons too. The presence of allegations regarding accounting issues will raise average settlement values by approximately 20%. Settlements in cases in which accounting irregularities are admitted increase by a further half.

When the allegations of a suit are subject to official investigation, for example by the SEC or the New York Attorney General's Office, or result in a consent agreement or official punishment; settlements are higher. This outside evidence of the merits of a case leads to an approximately 25% increase in expected settlement value.

One of Congress's major goals for the PSLRA was to involve institutional investors as lead plaintiffs. In this the PSLRA has been effective, though the effect has taken time. In 2000, 14% of settled cases had an institutional lead plaintiff. In 2005, the figure was 38%. Controlling for other case characteristics, cases with an institutional investor lead plaintiff settle for a statistically significant one-third more. It is possible that institutional investors are more likely to choose to be involved in cases with greater merit, although we are controlling for other easily observable features of the suit. Alternatively, institutional investors as lead plaintiffs may retain more effective counsel, supervise counsel more effectively, and provide an independent contribution to strategy.

8

**EXHIBIT D - Page 040**