1  Jordan L. Lurie (130013)
   jlurie@weisslurie.com
2  Leigh A. Parker (170565)
   lparker@weisslurie.com
3  WEISS & LURIE
   10940 Wilshire Boulevard, 23rd Floor
4  Los Angeles, CA 90024
   Tel:   (310) 208-2800
5  Fax:  (310) 209-2348

6  Richard B. Brualdi (Admitted *Pro Hac Vice*)
   rbrualdi@brualdilawfirm.com
7  Sue Lee (Admitted *Pro Hac Vice*)
   slee@brualdilawfirm.com
8  THE BRUALDI LAW FIRM, P.C.
   29 Broadway, Suite 2400
9  New York, NY 10006
   Tel:   (212) 952-0602
10 Fax:  (212) 952-0608

11 Co-Lead Counsel for Lead Plaintiff
   and the Settlement Class

12

13

14                    **UNITED STATES DISTRICT COURT**

15                    **CENTRAL DISTRICT OF CALIFORNIA**

16  JERRY MICHAEL CRAFTON,        )   CASE NO. SACV-07-0065-PSG (MLGx)
    Individually and on Behalf of All )
17  Others Similarly Situated,        )   <u>CLASS ACTION</u>
                                      )
18                    Plaintiff,      )   **PLAINTIFFS' MEMORANDUM OF**
                                      )   **POINTS AND AUTHORITIES IN**
19          v.                        )   **SUPPORT OF MOTION FOR AN**
                                      )   **AWARD OF ATTORNEYS' FEES AND**
20  POWERWAVE                        )   **EXPENSES**
    TECHNOLOGIES, INC.,              )
21  BRUCE C. EDWARDS,                )   Hearing Date and Time Set by Court Order
    RONALD J. BUSCHUR and           )   Dated June 22, 2009
22  KEVIN T. MICHAELS,               )
                                      )   Date:  October 19, 2009
23                    Defendants.     )   Time:  2:30 p.m.
                                      )   Ctrm:  790, Roybal Federal Building
24  _____  )   Judge: Hon. Philip S. Gutierrez

25

26

27

28

1

## TABLE OF CONTENTS

2

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     THE REQUESTED FEE IS JUSTIFIED . . . . . . . . . . . . . . . . 3

        A.      The Result Achieved for the Settlement Class and the Efforts of
                Plaintiffs' Counsel . . . . . . . . . . . . . . . . . . . . . . . . . 4

        B.      Reaction of the Settlement Class to Date Supports Approval of the
                Attorneys' Fees Requested . . . . . . . . . . . . . . . . . . . . . 7

        C.      The Efforts of Plaintiffs' Counsel and Complexity of the Case . . . 7

        D.      Class Counsel's Experience . . . . . . . . . . . . . . . . . . . . 11

        E.      The Risks Assumed by Plaintiffs' Counsel . . . . . . . . . . . . 11

        F.      Lodestar Cross-Check . . . . . . . . . . . . . . . . . . . . . . 14

III.    THE REQUESTED EXPENSES SHOULD BE REIMBURSED . . . . 15

IV.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

**TABLE OF AUTHORITIES**

**CASES**                                                                                           **Page**

*Behrens v. Wometco Enters., Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).  . . .  4

*Bryant v. Avado Brands, Inc.*,
    100 F. Supp. 2d 1368 (M.D. Ga. 2000), *rev'd and remanded on other
    grounds sub nom. Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001)  . .  14

*Craft v. County of San Bernardino*,
    624 F. Supp. 2d 1113 (C.D. Cal. 2008) . . . . . . . . . . . . . . . . . 3, 4

*Cullen v. Whitman Medical Corp.*,
    197 F.R.D. 136 (E.D. Pa. 2000) . . . . . . . . . . . . . . . . . . . . 6

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . 15

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Corel Corp. Sec. Litig.*,
    293 F. Supp. 2d 484 (E.D. Pa. 2003) . . . . . . . . . . . . . . . . . 6

*In re Crazy Eddie Sec. Litig.*,
    824 F. Supp. 320 (E.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . 6

*In re General Instr. Sec. Litig.*,
    209 F. Supp. 2d 423 (E.D. Pa. 2001) . . . . . . . . . . . . . . . . . 6

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000) . . . . . . . . . . . . . . . . . . 13-14

*In re King Res. Co. Sec. Litig.*,
    420 F. Supp. 610 (D. Colo. 1976) . . . . . . . . . . . . . . . . . . 4

*In re Medical X-Ray Film Antitrust Litig.*,
    1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998) . . . . . . . . 6

*In Re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . 5-6

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) . . . . . . . . . . . . . . 6, 17

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . 3, 12

*McPhail v. First Command Fin. Planning, Inc.*,
    2009 U.S. Dist. LEXIS 26544 (S.D. Cal. Mar. 30, 2009) . . . . . . 6, 14

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . 3

*Powers v. Eichen*,
     229 F.3d 1249 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . 3

*Six Mexican Workers v. Ariz. Citrus Growers*,
     904 F.2d 1301 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . 3

*Torrisi v. Tucson Elec. Power Co.*,
     8 F.3d 1370 (9th Cir. 1993), *cert. denied*, 512 U.S. 1220 (1994) . . . . . . 3

*Vizcaino v. Microsoft Corp.*,
     290 F.3d 1043 (9th Cir.), *cert. denied*, 537 U.S. 1018 (2002) . . . . 3, 11-12

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
     §78j(b)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

iii

**I.     INTRODUCTION**

Lead Plaintiff John Both, on behalf of the Settlement Class (collectively, "Plaintiffs"), submits this memorandum of points and authorities in support of Plaintiffs' motion for an award of attorneys' fees and for reimbursement of costs and expenses incurred in successfully prosecuting this action.[1]

While the benchmark in this Circuit for an award of attorneys' fees for securities class actions is 25% of the recovery, Plaintiffs' counsel respectfully seek an upward adjustment to 33-1/3%.  As set forth below and in Plaintiffs' Confidential Memorandum in Support of Motion for Final Settlement Approval ("Plaintiffs' Confidential Memo") filed concurrently, Plaintiffs' counsel succeeded in settling this case for $3.15 million in the face of potentially crippling problems in proving causation and damages on the claims that survived the Court's motion to dismiss order.  This remarkable result justifies the fee request.  There was a significant risk that Plaintiffs would spend several more years litigating this matter without any assurance that they would obtain any recovery at all for the Settlement Class.

The reaction of the Settlement Class also supports the fee award sought here. Over 93,000 Notices of Pendency and Proposed Settlement of Class Action ("Notice") were mailed informing the Settlement Class of Plaintiffs' counsel's fee request of up to 33-1/3%, and there have been no objections to the fee request. (There also have been no objections to the amount of reimbursed expenses or to the amount sought as reimbursement to the Lead Plaintiff.)  This is significant because the Settlement Class includes, in addition to thousands of individuals, many sophisticated financial institutions which have counsel available to advise, repre-

---

[1] Unless otherwise indicated, all capitalized terms have the same meaning as defined in the Stipulation and Agreement of Settlement ("Stipulation") dated May 14, 2009 and filed on May 15, 2009.  As directed by this Court's June 22, 2009 Order, a separate Memorandum of Points and Authorities in Support of Lead Plaintiff's Application for Reimbursement of His Time and Expenses is filed concurrently.  Mr. Both also has filed concurrently a sworn Declaration in support of his request.

1   sent and assist them in expressing opposition to the Settlement or the request for

2   attorneys' fees and expenses, if they so choose.

3          Moreover, the percentage of recovery in this Settlement for the claims that

4   were sustained far exceeds the average securities class action settlement in the

5   Ninth Circuit and is greater than recoveries obtained in other cases where courts

6   have approved attorneys' fees of 1/3 of the common fund.

7          The Declaration of Jordan L. Lurie Filed on Behalf of Weiss & Lurie in

8   Support of Final Settlement Approval and for an Award of Attorneys' Fees and

9   Expenses (the "Lurie Decl."), filed concurrently, details the efforts and extensive

10  work performed by Co-Lead Counsel for the benefit of the Settlement Class and

11  further justifies the fee request.[2]  As requested by the Court, Co-Lead Counsel have

12  provided the Court with a complete description of the hours spent on this litigation,

13  broken down into categories of work and describing the tasks performed.  For the

14  Court's convenience, charts of counsel's hours also are provided.  *See* Lurie Decl.,

15  Exhibit B; Declaration of Richard Brualdi on Behalf of The Brualdi Law Firm,

16  P.C., in Support of Final Settlement Approval and for an Award of Attorneys' Fees

17  and Expenses ("Brualdi Decl."), Exhibit B.

18         The Settlement was not easily achieved, and there was no guarantee that

19  Plaintiffs' counsel would be compensated for their time expended.  Even at the

20  requested fee percentage, Plaintiffs' counsel incurred a negative multiplier, *i.e.*,

21  counsel's lodestar for time incurred exceeds the fee request.

22         Accordingly, for the reasons set forth herein and in the supporting papers,

23  Plaintiffs' counsel request that the Court award fees in the amount of $1,050,00,

24  and reimbursement of expenses in the amount of $275,418.49.

25

26

27         _____

28         [2]The Lurie Decl. and Plaintiffs' memorandum in support of final settlement
    approval filed concurrently also contain detailed descriptions of the factual and
    procedural history of the litigation and the claims asserted.

## II.    THE REQUESTED FEE IS JUSTIFIED

It is well-settled in this Circuit that attorneys' fees in common fund cases are awarded on a percentage basis.  While the court has discretion to apply either the lodestar method or the percentage of the fund method, "the primary basis of the fee award remains the percentage method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir.), *cert. denied*, 537 U.S. 1018 (2002).  *See also Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993), *cert. denied*, 512 U.S. 1220 (1994); and *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").

The rationale for compensating counsel in common fund cases on a percentage basis is sound.  First, it is consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated by a percentage of the recovery.  Second, it more closely aligns the lawyers' interest in being paid a fair fee with the interests of the class in achieving a maximum possible recovery in the shortest amount of time.  Third, use of the percentage method decreases the burden imposed on courts by eliminating a detailed and time-consuming lodestar analysis and by assuring that the beneficiaries of the settlement do not experience undue delay in receiving their share of the settlement.  *See, e.g., Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008).

In *Paul, Johnson*, the Ninth Circuit established 25% of the fund as the "benchmark" award for attorneys' fees.  886 F.2d at 272; *see also Torrisi*, 8 F.3d at 1376; *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).  In this case, Plaintiffs' counsel seek an upward adjustment to 1/3 of the class fund as fees.

Although there is no bright line test for determining the percentage to be applied, courts often consider the following factors:  (1) the results achieved for the class; (2) the effort expended by counsel; (3) counsel's experience; (4) counsel's skill; (5) the complexity of the issues; (6) the risks of non-payment assumed by

counsel; (7) reaction of the class; and (8) comparison with counsel's lodestar. *See Craft*, 624 F. Supp. 2d at 1116. All of these factors weigh in favor of approving the requested fee.

### A.   The Result Achieved for the Settlement Class and the Efforts of Plaintiffs' Counsel

Courts have consistently recognized that the result achieved is an important factor to be considered in making a fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) ("the amount of the recovery, and end result achieved are of primary importance, for these are the true benefit to the client."); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-548 (S.D. Fla. 1988) ("[t]he quality of work performed in a case that settles before trial is best measured by the benefit obtained."), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

As set forth in further detail in Plaintiffs' Confidential Memorandum lodged concurrently, Plaintiffs' counsel here achieved an extraordinary result: they settled this matter for $3.15 million in cash despite the facts that the claims alleged by Plaintiffs which yielded the most damages, namely, the claims regarding Defendants' FY 2006 revenue projections for Powerwave Technologies, Inc. ("Powerwave" or the "Company") and Defendants' other alleged misstatements regarding FY 2006, and Plaintiffs' claims arising under §10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b), against all Defendants except Powerwave, were dismissed by this Court's order on Defendants' motion to dismiss, and the remaining claims regarding Powerwave's FY 2005 financial statements suffered from serious infirmities and problems proving causation and damages.

The dismissal of Plaintiffs' claims related to Defendants' FY 2006 revenue projections and other statements, and dismissal of §10(b) claims against all Defendants other than the Company, left Plaintiffs with complex accounting fraud

4

claims that presented highly technical and fact-intensive issues relating to proof of the required elements of loss causation, scienter and damages.  Plaintiffs anticipated that Defendants would vigorously contest the motion for class certification filed shortly before the Settlement was reached.  Defendants also were expected to file a motion for summary judgment challenging, among other issues, whether Plaintiffs could prove loss causation with respect to  Defendants' specific disclosures.  Plaintiffs faced serious risks on both of those motions, and even if successful on those motions, at trial.

That Plaintiffs were able to achieve a multimillion dollar recovery, given the difficulties of proof in establishing damages and causation, is remarkable.  Defendants maintained that the damages recoverable on the claims sustained by this Court were *zero*, and, as explained in the Confidential Memorandum, there was every risk that a jury would agree.

In short, Co-Lead Counsel achieved a favorable recovery for the Settlement Class in the face of very substantial risks - even the likelihood - of achieving no recovery at all.  Under these circumstances the requested fee is justified.  Under similar circumstances, in *In Re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 456-458 (9th Cir. 2000), the Court upheld a fee award of 33.3%, recognizing the efforts of plaintiffs' counsel in resolving the matter where the "[p]laintiffs' case was weak and the risk, expense and complexity of trial weighed against them."

Moreover, Plaintiffs' Counsel recovered an extraordinarily high percentage of potential damages on the sustained claims and maximized the possible recovery to be obtained by the Settlement Class (as Plaintiffs explained in detail in their Confidential Memorandum), further justifying the fee request.  Even with the risks of no recovery, Plaintiffs' Counsel succeeded in achieving approximately *37%*, or more, of the potential damages arising from the sustained claims, a percentage of recovery that far exceeds the average recovery in securities class action settlements

5

1    in the Ninth Circuit and is greater than recoveries obtained in other cases where

2    courts have approved attorneys' fees of 1/3 of the common fund.

3          The percentage recovery here far exceeds the percentages recovered in other

4    securities cases where a fee of one third was awarded.  For example, in *Mego,*

5    *supra*, 213 F.3d at 459, the Ninth Circuit affirmed the district court's award of a

6    33.3% fee where plaintiff recovered $1.75 million out of a claimed $12 million in

7    damages, or approximately 14.6% of damages.  *See also McPhail v. First*

8    *Command Fin. Planning, Inc*., 2009 U.S. Dist. LEXIS 26544, at *14-*15 (S.D.

9    Cal. Mar. 30, 2009) (court awarded 30% where plaintiffs' counsel achieved

10   recovery of 7% of estimated damages); *In re Omnivision Techs., Inc*., 559 F. Supp.

11   2d 1036, 1046 (N.D. Cal. 2007) (upward adjustment from 25% benchmark

12   awarded where the recovery was "approximately 9% of the possible damages" and

13   the court noted that recovery "is more than triple the average recovery in securities

14   class action settlements"); *In re Medical X-Ray Film Antitrust Litig*., 1998 U.S.

15   Dist. LEXIS 14888, at *7 (E.D.N.Y. Aug. 7, 1998) (court increased 25%

16   benchmark to 33.3% where counsel recovered 17% of damages); *In re Crazy Eddie*

17   *Sec. Litig*., 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (court increased 25%

18   benchmark to 33.8% where counsel recovered 10% of damages); *In re Corel Corp.*

19   *Sec. Litig*., 293 F. Supp. 2d 484, 489-490, 498 (E.D. Pa. 2003) (one-third fee

20   awarded from settlement fund that comprised about 15% of damages);  *In re*

21   *General Instr. Sec. Litig*., 209 F. Supp. 2d 423, 431, 434 (E.D. Pa. 2001) (one-third

22   fee awarded from $48 million settlement fund that was 11% of the plaintiffs'

23   estimated damages); *Cullen v. Whitman Medical Corp*., 197 F.R.D. 136, 148 (E.D.

24   Pa. 2000) (one-third awarded in fees from settlement of class consisting of

25   defrauded vocational students that was 17% of the tuition the class members paid).

26         These factors alone would justify an upward adjustment.  Had this case not

27   settled and proceeded to summary judgment or trial, it is likely that the Settlement

28   Class would have received nothing.  Here, the Settlement Class received an

6

1   extraordinary benefit, exclusively as a result of the efforts of Plaintiffs' counsel, as

2   described below, and no Settlement Class members has objected to the fee request.

3   **B.    Reaction of the Settlement Class to Date Supports Approval of the Attorneys' Fees Requested**

4

5   The Court-approved Notice was sent to over 93,000 potential Members of

6   the Settlement Class and the Court-approved Summary Notice was published

7   twice, on August 24, 2009 and September 1, 2009, via *Business Wire*. *See*

8   paragraphs 3-8 of the Declaration of Michael Rosenbaum Re: Mailing of Notice,

9   Publication of Summary Notice and Requests for Exclusion Received filed

10  concurrently herewith.  The Notice clearly identified the fee request.  The deadline

11  set by the Court to object to the attorneys' fee request, or any part of the

12  Settlement, was October 5, 2009.  To date, Co-Lead Counsel have received no

13  objections to the amount of attorneys' fees and expenses sought.

14  **C.    The Efforts of Plaintiffs' Counsel and Complexity of the Case**

15  Plaintiffs' Counsel devoted over 3,768 hours to this litigation.  The formal

16  discovery, and research and investigation conducted by Plaintiffs' Co-Lead

17  Counsel included: (a) research and investigation to locate witnesses; (b) interviews

18  with witnesses; (c) conferences with investigators, forensic accounting consultants

19  and damages consultants and review of their reports; (d) the review of thousands of

20  pages of Powerwave's periodic reports filed with the Securities and Exchange

21  Commission ("SEC"), annual reports, press releases, transcripts of Defendants'

22  conference calls with securities analysts and other public statements by

23  Defendants; (e) review of news reports and articles about Powerwave; (f) review

24  and analysis of Defendants' statements during the Settlement Class Period; (g)

25  factual research and preparation of the FACC, which included research of the

26  applicable law with respect to the claims asserted therein and the potential defenses

27  thereto, and research regarding extending the class period; (h) preparing and

28  serving document requests, interrogatories and requests for admission on

Defendants; (i) preparing the Lead Plaintiff's objections and responses to Defendants' document requests and interrogatories, and producing responsive documents; (j) preparing for and defending the deposition of the Lead Plaintiff; and (k) research and preparation for the mediation and settlement negotiations leading to the proposed Settlement.

The Lurie Decl. details the tasks performed.  Co-Lead Counsel also have provided the Court with charts of the hours spent on this Litigation, broken down into categories of work performed in the Litigation.  *See* Lurie Decl., Exhibit B; Brualdi Decl., Exhibit B.  This information, coupled with the additional descriptions herein and in the Lurie and Brualdi Decls., is sufficient to permit the Court to review the time expended by counsel and their paraprofessionals in this litigation.

The tasks performed by Co-Lead Counsel are grouped into the following categories and summarized in counsel's respective lodestar charts:

**(1) Factual Research and Preparation of the FACC**: this category includes review of public documents and Defendants' statements; informal discovery such as locating and interviewing potential witnesses; consultations with investigators;  consultations with forensic accounting and damages consultants; factual and legal research regarding Plaintiffs' claims; research and drafting the FACC; and filing and service of the FACC and related documents.

**(2) Discovery**: this category includes formal and confirmatory discovery, the early meeting of counsel regarding discovery and Rule 26 disclosures; preparation of Plaintiffs' initial disclosures; conferences with defense counsel and preparation of the parties' Rule 26(f) report; preparation for scheduling conferences; research regarding electronic discovery; preparation of document requests, requests for admission and interrogatories served on Defendants; review of Defendants' responses thereto; review of Defendants' discovery requests and preparation of the Lead Plaintiff's responses thereto; conferences with defense counsel regarding

Plaintiffs' discovery responses; preparation for and defending the Lead Plaintiff's deposition in New York City; research and negotiation with Defendants regarding a protective order; conferences with damages consultants; review of documents produced by Defendants; preparation for and conducting a confirmatory interview with Powerwave's Vice President of Finance.

(3) **Law & Motion**: this category includes legal and factual research, preparation and filing/service of the Lead Plaintiff's motion for appointment as lead plaintiff, opposition to competing motions and a reply brief in support of that motion; preparation for the hearing on the competing motions for appointment as lead plaintiff; factual and legal research, preparation and filing/service of Plaintiffs' oppositions to Defendants' motions to dismiss and for reconsideration; and legal and factual research, preparation and filing/service of the Lead Plaintiff's motion for class certification.

(4) **Court Appearances**: this category includes court appearances, and travel to/from appearances for the following hearings: motion for appointment of lead plaintiff; Defendants' motion to dismiss; scheduling conference; motion for preliminary settlement approval and motion for final settlement approval.

(5) **Settlement**: this category includes preparation for and participation in mediation; negotiation and preparation of the parties' Memorandum of Understanding; preparation of the Stipulation of Settlement; retention of escrow agent and negotiation of escrow agreement; research and conferences with damages consultants and the Claims Administrator regarding the Plan of Allocation; preparation of the Notice; preparation of the claim form; preparation of the Summary Notice; legal and factual research, preparation and service/filing of motion for preliminary settlement approval and preparation of exhibits thereto; preparation for hearing on motion for preliminary settlement approval; conferences with the Claims Administrator regarding settlement administration; conferences with defense counsel regarding Powerwave's shareholder list and transfer agent

1  records and providing same to the Claims Administrator; communications with the
2  Claims Administrator regarding requests for exclusion and transmitting same to
3  defense counsel; communications with potential Settlement Class Members;
4  research, preparation and filing/service of motions and other pleadings in support
5  of final settlement approval and application for attorneys' fees and reimbursement
6  of expenses of Co-Lead Counsel and Lead Plaintiff.

7       The prosecution and settlement of this complex case required the extensive
8  use of investigators and consultants in the areas of forensic accounting and
9  damages.  The stringent pleading standards of the Private Securities Litigation
10  Reform Act ("PSLRA") require the use of investigators to locate potential
11  witnesses, a time-consuming and expensive endeavor for plaintiffs.  Co-Lead
12  Counsel were therefore required to, and did, expend considerable time, effort and
13  expense in working with the investigators and consultants who contributed to the
14  successful pleading and resolution of this case.

15       Plaintiffs' counsel also successfully opposed Defendants' motion for
16  reconsideration with respect to issues that had been found in Plaintiffs' favor on
17  the motion to dismiss.

18       Co-Lead Counsel demonstrated that, notwithstanding the barriers erected by
19  the PSLRA, they would develop the evidence to support a convincing case.  Co-
20  Lead Counsel demonstrated their knowledge of the applicable law and experience
21  as they successfully defended Plaintiffs' claims of financial fraud relating to the
22  Company's FY 2005 financial statements from the legal challenges brought by
23  Defendants in their motions to dismiss and for reconsideration.  Co-Lead Counsel
24  also successfully negotiated a highly favorable settlement of those claims despite
25  the dismissal of a substantial portion of the claims alleged in the FACC, and with
26  them a large portion of the estimated recoverable damages, and the §10(b) claims
27  against all Defendants other than Powerwave.  The effort and skill demonstrated by
28  Plaintiffs' Co-Lead Counsel supports the requested fee award.

1    The quality of opposing counsel also is important in evaluating the quality of

2    work done by Co-Lead Counsel and the risks overcome.  Defendants were ably

3    represented by very skilled and capable counsel from a prominent national law

4    firm, O'Melveny & Myers, LLP, with a well-deserved nationwide reputation for

5    vigorous advocacy in the defense of complex federal securities litigation.  In the

6    face of strong opposition by highly skilled defense counsel, Co-Lead Counsel

7    assembled a case that survived, in part, Defendants' motion to dismiss.  Co-Lead

8    Counsel also exercised discretion and professional judgment in evaluating the

9    merits and the risks presented and advising the Lead Plaintiff to settle the case to

10   maximize the recovery to the Settlement Class, particularly in light of the dismissal

11   of a substantial portion of Plaintiffs' claims and the problems of proof Plaintiffs

12   faced in establishing, *inter alia*, the required elements of causation, scienter and

13   damages.

14   **D.      Class Counsel's Experience**

15   The expertise and experience of Co-Lead Counsel is an important factor in

16   assessing the adequacy of a settlement and in setting a fair fee.  Co-Lead Counsel

17   are experienced and skilled practitioners in the securities litigation field,

18   responsible for significant settlements and legal decisions that enable litigation

19   such as this to be successfully prosecuted.  *See* Lurie Decl., Exhibit A, Brualdi

20   Decl., Exhibit A.  This is particularly relevant in the context of securities class

21   actions where defendants retain highly experienced defense attorneys from

22   prestigious law firms.  Despite great risk, the dismissal of a substantial portion of

23   Plaintiffs' claims and the problems of proof Plaintiffs faced in establishing certain

24   of the required elements of their claims, this Settlement of $3.15 million in cash is

25   an exceptional benefit obtained for the Settlement Class.

26   **E.      The Risks Assumed by Plaintiffs' Counsel**

27   Numerous cases have recognized that risk is an important factor in

28   determining a fair fee award.  *See, e.g., Vizcaino*, 290 F.3d at 1048 ("[r]isk is a

11

relevant circumstance with regard to the reasonableness of attorneys' fees," citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d, 373, 379 (9th Cir. 1995)); *WPPS*, 19 F.3d at 1299-1301 (finding district court's failure to apply multiplier was an abuse of discretion where the case was "fraught with risk and recovery was far from certain");  Uncertainty that an ultimate recovery would be obtained is highly relevant in determining risk.  *See WPPSS*, 19 F.3d at 1300.

The risks assumed by Plaintiffs' counsel, particularly the risk of non-payment of attorneys' fees or reimbursement of expenses, is a factor in determining the fee award.  This litigation was undertaken by Co-Lead Counsel on a wholly contingent basis.  Co-Lead Counsel understood that they were taking on a complex, lengthy and expensive litigation with no guarantee of ever being compensated for the investment of time and money the case would require.  In undertaking that responsibility, Co-Lead Counsel was obligated to assure that sufficient attorney resources were dedicated to the prosecution of the litigation and that funds were available to compensate staff and to pay for the very considerable expenses required to investigate and litigate a complex case like this one.

Plaintiffs' Co-Lead Counsel represented the Settlement Class for more than two and a half years and to date have received no compensation for their services.  The litigation entailed significant attorney time and expenses, required the counsel involved to forego other work and imposed a financial and resource burden on each of the firms representing the Settlement Class.  As the court wrote in *Vizcaino*, such "burdens are relevant circumstances."  290 F.3d at 1050, citing *Bebchick v. Washington Metro. Area Transit Com.*, 805 F.2d 396, 407 (D.D.C. 1986).

Unlike the defense bar, whose attorneys are paid regularly for each hour of service and are reimbursed on a current basis for expenses incurred, plaintiffs' lawyers normally have no steady flow of income.  The financial burden on contingent counsel is far greater than on a firm that is paid on an ongoing basis.

1   Moreover, changes in the law through legislation or judicial decree can adversely

2   impact pending litigation.  Because discovery of facts unknown when the case

3   commenced or a significant change in the law during the pendency of the litigation,

4   highly professional efforts of members of the plaintiffs' bar produce no result for

5   the class or corporation sued for, and hence, no fee for counsel.

6       Court repeatedly have held that it is in the public interest to have

7   experienced and able counsel enforce the securities laws and regulations pertaining

8   to public companies.  Vigorous enforcement of the federal securities laws can

9   occur only if private plaintiffs can obtain parity in representation with that

10  available to large corporate interests.  If this important public policy is to be carried

11  out, the courts must award fees that will adequately compensate private plaintiffs'

12  counsel, taking into account the enormous risks undertaken with a clear view of the

13  economics of a securities class action.

14      There can be little doubt that this litigation was risky and that the outcome

15  was genuinely questionable.  The Settlement did not occur simply upon the filing

16  of the complaint or the FACC or upon the fact that certain of Plaintiffs' claims

17  survived the motion to dismiss.  Indeed, Defendants have never capitulated.

18  Defendants have never agreed that any of Plaintiffs' factual or legal claims have

19  merit.  Defendants have consistently denied wrongdoing, even insisting on such a

20  disclaimer in the Stipulation of Settlement and Notice.

21      Further, as set forth in Plaintiffs' memorandum in support of final settlement

22  approval, and the Lurie Decl., substantial risks and uncertainties were present in

23  this litigation that made it far from certain that any recovery for the Settlement

24  Class would be obtained.  While courts have always recognized that securities

25  class actions carry significant risks, post-PSLRA rulings on motions to dismiss

26  (like the Court's ruling in this case) make it clear that the risk of no recovery (and

27  hence no fee) has increased exponentially.  Courts have noted that "securities

28  actions have become more difficult from a plaintiff's perspective in the wake of the

13

PSLRA." *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000).  As one court noted, "[a]n unfortunate byproduct of the PSLRA is that potentially meritorious suits will be short-circuited by the heightened pleading standard." *Bryant v. Avado Brands, Inc.*, 100 F. Supp. 2d 1368, 1377 (M.D. Ga. 2000), *rev'd and remanded on other grounds sub nom. Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001).

This case involved numerous complex questions of law under the PSLRA, which, in the absence of a settlement, would have been hotly litigated.  For example, this case presented novel issues concerning loss causation and damages on Plaintiffs' motion for class certification.  Defendants' anticipated motion for summary judgment, and trial, also would have raised complex factual and legal issues of loss causation, scienter and damages, all of which would have required substantial briefing and extensive consideration by this Court.  Given the current state of the law on those hotly contested issues, it is also possible, if not likely, that one party or the other would have appealed subsequent opinions of this Court.

**F.    Lodestar Cross-Check**

Under the lodestar method, the court first establishes a "lodestar" by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  Once the lodestar is calculated, the court may enhance the lodestar with a "multiplier" to arrive at a reasonable fee.  Here, the lodestar cross-check clearly demonstrates that the fee requested by Plaintiffs' Co-Lead Counsel is reasonable because counsel are seeking attorneys' fees of *less than half of their lodestar*, *i.e.*, a negative multiplier.  *See, e.g., McPhail, supra*, 2009 U.S. Dist. LEXIS 26544, at *23 ("the proposed attorneys' fee award is less than Class Counsel's lodestar calculation, buttressing the Court's finding of reasonableness.")

Here, Co-Lead Counsel have expended a total of 3,768.95 hours in the prosecution of this case over more than two and a half years.  This number of hours is consistent with hard-fought litigation over that period of time.  The tasks

performed are set forth above and in Exhibit B to the Lurie Decl. and Exhibit B to the Brualdi Decl.  In summary, this litigation was conducted by Co-Lead Counsel in a coordinated and well-organized fashion to ensure efficiency and minimize duplication of work.  In addition, where professionally and economically feasible, work was assigned to personnel with lower billing rates in order to provide the best quality work at the lower cost.  The hours spent on this litigation were reasonable in amount and necessary to the successful prosecution of this matter.

The rates charged by counsel also are reasonable.  Co-Lead Counsel have provided the Court with a list of attorneys and paralegals who worked on this matter and their current billing rates.  *See* Lurie Decl., Exhibit B and Brualdi Decl., Exhibit B.  Counsel's rates are in line with rates prevailing in the community for similar services of lawyers of reasonable comparable skill and reputation.  Co-Lead Counsel also have provided the Court with their firm biographies that demonstrate the firms' breadth, experience and track records, and further support the market rates for firms with the skill, background, qualifications and experience of Co-Lead Counsel.  *See* Lurie Decl., Exhibit A; Brualdi Decl., Exhibit A.

## III.    THE REQUESTED EXPENSES SHOULD BE REIMBURSED

Co-Lead Counsel have incurred expenses in an aggregate amount of $275,418.49 in prosecuting the litigation.  This amount actually is less than the amount set forth in the Notice to Settlement Class Members.  The expenses are detailed in paragraphs 4-6 of the Lurie Decl. and paragraphs 4-6 of the Brualdi Decl. filed concurrently.

The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace.  *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citation omitted).   The categories of expenses

15

for which counsel seek reimbursement are the type of expenses routinely charged to hourly paying clients and, therefore, should be reimbursed out of the common fund.

Co-Lead Counsel's expenses are documented in detail in the Lurie and Brualdi Decls. filed concurrently. The bulk of Co-Lead Counsel's expenses are the cost of investigators, experts and consultants. In the post-PSLRA era, the use of investigators to gather detailed fact-specific information from percipient witnesses in order to plead complaints that will survive the heightened pleading standards of the PSLRA on a motion to dismiss is a necessity. In this case, private investigators conducted a substantial amount of work on behalf of the Settlement Class to identify and locate witnesses who had knowledge of the alleged wrongdoing. Many of the witnesses located by the investigators were interviewed and provided valuable information relating to key issues in the case. Co-Lead Counsel used the results of this investigation to plead the highly detailed and specific facts detailed in the FACC.

This case also required extensive conferences with consultants in the areas of forensic accounting and damages. The highly detailed allegations of how Powerwave's FY 2005 financial statements were allegedly overstated, which accounts were misstated and by how much, and the impact of those misstatements on the Company's reported financial statements, were the product of extensive analysis of Defendants' public statements and reported financial statements, SEC reports and other publicly available information by forensic accountants and are summarized in a detailed restatement of Powerwave's financial statements included in the FACC. One need only compare the cursory allegations of the initial complaints filed in this matter with the highly detailed allegations of the FACC to see the results of Plaintiffs' Co-Lead Counsel's work with forensic accounting consultants. Indeed, Plaintiffs' claims arising from Powerwave's FY 2005 financial statements were the only claims sustained by this Court.

1    Likewise, Co-Lead Counsel conferred with damages consultants to develop

2    damages models and estimate the amount of recoverable damages in this action.

3    That work was essential to developing Plaintiffs' theory of the case and to guide

4    strategic decisions made in the litigation, including the Settlement.  Moreover,

5    Plaintiffs' damages consultants assisted Co-Lead Counsel in developing the Plan

6    of Allocation of the Settlement proceeds detailed in the Notice and explained in

7    Plaintiffs' memorandum in support of final settlement approval filed concurrently.

8    Other expenses relate to filing fees, photocopying, legal research services

9    such as Lexis/Nexis and other online research services, printing, postage and

10   messenger services and costs of travel.  All of these expenses are reasonable in

11   amount, and it is appropriate for counsel to recover these costs from the fund

12   created in the Settlement.  *See Omnivision, supra*, 559 F. Supp. 2d at 1048-1049.

13   **IV.    CONCLUSION**

14   For the reasons set forth herein, and in the Lurie Decl., Plaintiffs respectfully

15   request that this Court award attorneys' fees of 33-1/3% of the Settlement Fund

16   and reimbursement of requested expenses.

17
Dated: October 13, 2009          Jordan L. Lurie
18                               Leigh A. Parker
                                 WEISS & LURIE
19

20                                   /s/ - Jordan L. Lurie
                                 10940 Wilshire Boulevard, 23rd Floor
21                               Los Angeles, CA 90024
                                 Tel:   (310) 208-2800
22                               Fax:   (310) 209-2348

23                               Richard B. Brualdi
                                 Sue Lee
24                               THE BRUALDI LAW FIRM, P.C
                                 29 Broadway, Suite 2400
25                               New York, NY 10006
                                 Tel:   (212) 952-0602
26                               Fax:   (212) 952-0608

27                               Co-Lead Counsel for Lead Plaintiff and the
                                 Settlement Class
28

17